# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

MICHAEL HOJNICKI )
)
    Plaintiff-Below, Appellant, )
)
)
                 v. )    C.A. No.: CPU4-13-003805
)
)
JOHN CHILDS and STEVEN MULLINS, )
)
    Defendants-Below, Appellees. )

Submitted: April 2, 2014
Decided: April 25, 2014

Michael Hojnicki
48 Dasher Avenue
Bear, DE 19701
    *Pro-Se Plaintiff*

John Childs
622 Black Diamond Road
Smyrna, DE 19977

Steven Mullins
217 Brickstore Landing Road
Smyrna, DE 19977
    *Pro*-Se Defendants

## DECISION AFTER TRIAL

**RENNIE, J.**

## INTRODUCTION

This matter is before the Court on appeal *de novo* from an order entered by the Justice of the Peace Court on November 26, 2013. The Justice of the Peace Court found in favor of Defendants John Childs and Steven Mullins (hereinafter "Childs," "Mullins," or collectively, "Defendants"), in an action that arose from a contract dispute over work performed by Defendants on Plaintiff Michael Hojnicki's (hereinafter "Hojnicki" or "Plaintiff") Yamaha wave runner. Mr. Hojnicki filed an appeal with this Court on December 20, 2013, pursuant to 10 *Del. C.* § 9570 *et. seq.* A trial was held on April 2, 2014, and the Court reserved decision. This is the Court's Opinion in connection with the relief sought by Mr. Hojnicki.

## FACTUAL BACKGROUND

Mr. Hojnicki purchased a 2007 Yamaha wave runner from his brother-in-law, Christopher Thompson (hereinafter "Thompson") in 2012. Mr. Thompson purchased the wave runner new in 2007, and in 2010 the engine fell into disrepair and had to be rebuilt.[1]

On June 16, 2012, the wave runner abruptly stopped working while Mr. Hojnicki was operating it on the water. According to Mr. Hojnicki, the engine would not start, even though the battery was fully charged. An acquaintance of Mr. Hojnicki referred him to Defendants as a potential option to repair the wave runner. Defendants are not a dealership, but both Mr. Childs and Mr. Mullins enjoy working on wave runners and other watercraft owned by their families and friends. They are both certified in repair work for Yamaha watercraft engines. On June 19, 2012, Mr. Hojnicki dropped off the wave runner to the Defendants for an estimate. Mr. Childs testified that after performing spark and compression tests on the motor, at a cost of $320,

---

[1] Mr. Childs testified that he and Mr. Mullins discovered that the engine had been rebuilt because the pistons were 0.25 millimeters over the size recommended by the manufacturer.

2

Defendants determined that cylinder number three was damaged.[2] Defendants discussed repair options with Mr. Hojnicki. Ultimately, the parties determined that the entire repair would cost $3,300: $2,000 for parts and $1,300 for labor. Mr. Hojnicki paid Defendants $2,000 as a cash deposit. At that time, Defendants informed Mr. Hojnicki that they were neither a dealership nor a business, and therefore could offer no warranty on the parts for the wave runner. However, both parties testified that Defendants stated that if problems arose as a result of their workmanship, that they would not charge Mr. Hojnicki for labor on future repairs.

Following the engine rebuild, Mr. Childs testified that Defendants ran the wave runner for eight hours, and performed a compression test on all parts to ensure compliance with the manufacturer specifications. Defendants also river tested the motor for approximately two hours. Defendants informed Mr. Hojnicki of the proper break-in procedure for the engine.[3] On August 12, 2012, Mr. Hojnicki took the wave runner for a test run in the Rehoboth Bay and Lewes Canal, keeping the vehicle at low variable RPMs while maintaining a full throttle. Mr. Hojnicki testified that after approximately seven hours of use, the engine stopped working. Mr. Hojnicki brought the wave runner back to Defendants, who determined that all of the parts they repaired were in working order, but that the engine had a blown crank seal. On August 24, 2012, Mr. Hojnicki picked up the wave runner and was told again to fill its tank with the gas/oil combination. The total cost to repair the crank seal was $550. Mr. Hojnicki testified that he requested and received a receipt for the work performed.

On September 22, 2012, Mr. Hojnicki operated the wave runner in the Rehoboth Bay near Love Creek. The watercraft again broke down, and was towed ashore. Mr. Hojnicki called

---

[2] Specifically, Mr. Childs testified that cylinder number three had been previously "blown up."

[3] Mr. Hojnicki testified that under the direction of Defendants, he filled the gas tank of the wave runner with gas and 16 ounces of oil per every six ounces of gas. Mr. Hojnicki also testified that he kept the watercraft in at least four to five feet of water at all times. Mr. Hojnicki testified that he did refuel at the Dewey Marina, but he did not state whether he added the 16 ounces of oil for every six gallons of gasoline added during this refuel.

3

Defendants, and they requested that Mr. Hojnicki give them an opportunity to inspect the engine a final time before Mr. Hojnicki took the wave runner to a dealership. Plaintiff testified that Mr. Childs stated that Defendants would stand behind their work. Mr. Hojnicki took the wave runner back to the Defendants for inspection, and Defendants determined that cylinder number three was damaged. Defendants testified that their previous repair of the cylinder was proper and that they could not definitively determine the cause of the subsequent damage to the cylinder.

Defendants informed Mr. Hojnicki of the parts he would need to purchase for the repair, but Mr. Hojnicki testified that he was unsure about what to do because of the costs associated with the repair. Mr. Hojnicki did not agree to further repairs, but instead asked Defendants to winterize the wave runner, which they did to prevent the engine block from freezing while in storage. Thereafter, Mr. Hojnicki picked up the wave runner from Defendants, and Defendants did not hear from him until Mr. Hojnicki filed the Complaint in the Justice of the Peace Court.[4]

## PARTIES' CONTENTIONS

Mr. Hojnicki contends that Defendants should be required to pay for necessary repairs to his wave runner after the repairs performed by Defendants allegedly failed to fix the engine problems. Mr. Hojnicki contends that Defendants' faulty workmanship is the cause of his wave runner's continuous engine issues, and therefore seeks $3,000 to cover the repairs at a Yamaha dealership.

Defendants contend that their repair work was properly conducted, and that they did fix the wave runner. Defendants allege that user error, for which they were not responsible,

---

[4] Mr. Hojnicki testified that he ultimately took the wave runner to Deptford Honda Yamaha to have the dealership determine the costs of repairs. The dealer determined that the cost to repair the vehicle, and to add a one-year warranty would be $2,612, and the cost with a two-year warranty would be $2,981. In this action, Mr. Hojnicki is seeking to recover the cost of repairs to be performed by the dealership.

contributed to the issues with the engine. Defendants contend that Mr. Hojnicki cannot demonstrate that their workmanship was faulty, and therefore, he cannot prove that their work caused the engine problems.

## DISCUSSION

Appeals from matters decided on the merits by the Justice of the Peace Court are reviewed *de novo*.[5] Mr. Hojnicki is proceeding on a breach of contract theory. In order to succeed on a breach of contract claim, Plaintiff must prove the following elements by a preponderance of the evidence: (1) the existence of a contract; (2) that Defendants breached an obligation imposed by the contract; and (3) that Plaintiff incurred damages as a result of the breach.[6]

### THE PARTIES ENTERED INTO A VALID CONTRACT

Although no written contract exists in this matter, the testimony of both parties demonstrates that there existed a verbal contract to perform repair services. Both parties acknowledged that Defendants agreed to repair the wave runner so that it could be used on the water. In turn, Plaintiff agreed to and did pay Defendants for the repairs. Neither party has contested the existence of a contract. Therefore, the Court is satisfied that Plaintiff proved this element by a preponderance of the evidence.

### PLAINTIFF FAILED TO PROVIDE SUFFICIENT EVIDENCE TO ESTABLISH A BREACH OF CONTRACT BASED ON DEFENDANTS' ALLEGED FAULTY WORKMANSHIP

---

[5] 10 *Del. C.* § 9571(a) provides for appeals as of right to the Court of Common Pleas from any final judgment of the Justice of the Peace Court. The requirements imposed by the statute are mandatory and jurisdictional. *See Williams v. Singleton*, 160 A.2d 376, 378 (Del. 1960); *Warren Williams Co. v. Giovannozzi*, 295 A.2d 587, 588 (Del. Super. 1972); *Woods v. Unisex Hair Palace*, 2009 WL 3152878, *1 (Del. Com. Pl. Aug. 26, 2009).

[6] *VLIW Tech., LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003).

5

Pursuant to the verbal contract, Defendants agreed to repair the wave runner and return it to Mr. Hojnicki in working condition. The testimony at trial demonstrates that Defendants repaired the wave runner, ran it for close to the manufacturer's recommended time to ensure that it was in proper working order, and then returned it to Mr. Hojnicki. The testimony at trial further revealed that Mr. Hojnicki ran the wave runner for close to 10 hours after it was returned to him. There is no evidence in the record that the cause of the first breakdown (blown crank seal) after Defendants' initial repair was related to work performed by Defendants, and therefore, Mr. Hojnicki has failed to prove that Defendants employed faulty workmanship with respect to the first repair.

After Defendants completed the crank seal repair, Mr. Hojnicki again took the wave runner out on the water, where it subsequently stopped working. The only evidence Mr. Hojnicki produced at trial demonstrates that the engine failed again, but did not offer any explanation as to the cause of the breakdown. This lack of evidence does not prove that Defendants' workmanship was a cause of the breakdown. Mr. Hojnicki's evidence supported his contention that the engine needed to be repaired, but he did not bring an expert witness or present other evidence to prove that the Defendants' faulty workmanship was the cause of the engine failures.

Conversely, Defendants provided the Court with expert testimony as to the possible causes of the engine problems. At trial, Defendants' expert, David Wayne Castagna (hereinafter "Castagna") testified about the possible causes of damage to the wave runner and why faulty workmanship based on the described malfunction could not be a contributing factor. Mr. Castagna testified that the problems exhibited by Mr. Hojnicki's wave runner are consistent with the flipping over of the wave runner and subsequent improper righting of the watercraft, which

6

causes water to get into the engine, and result in engine failure. Mr. Castagna also testified that sediment entry into the engine, caused by operating the wave runner in shallow waters, causes engine problems. Mr. Castagna testified that although he did not personally inspect Mr. Hojnicki's wave runner, the Defendants' workmanship could not be the cause of the subsequent engine failures. He specifically testified that if the wave runner's engine was put together improperly, the engine would have failed during the first few hours of use. Instead, testimony at trial demonstrates that the engine stopped working only after numerous hours of use.

Mr. Hojnicki has the burden to prove, by a preponderance of the evidence, that Defendants breached the contract, and that the subsequent damage to the wave runner was a result of the Defendants' faulty workmanship. Mr. Hojnicki provided the Court with evidence sufficient to inform the Court that the wave runner broke down two times after Defendants' initial repair, but he offered no evidence, either through expert testimony or through documents, that demonstrates that the cause of the breakdowns was the faulty workmanship of the Defendants. Indeed, the wave runner functioned properly each time Defendants returned it to Mr. Hojnicki. The wave runner only experienced problems after Mr. Hojnicki had operated it on the water outside the supervision of Defendants. Mr. Hojnicki cannot support his argument that the workmanship was faulty by using only his opinions and by requiring the Court to assume facts not in the record. Without evidence of fault by the Defendants, the Court is left to speculate about what caused the wave runner to stall. Thus, Mr. Hojnicki failed to prove that the Defendants breached their contract by employing faulty workmanship in their repair of the wave runner.

Accordingly, the Court finds in favor of Defendants on the breach of contract claim for repair costs for Plaintiff's wave runner.

## CONCLUSION

For the foregoing reasons, the Court finds in favor of Defendants John Childs and Steven Mullins. Each party shall bear his own costs.

**IT IS SO ORDERED.**

The Honorable Sheldon K. Rennie,
Judge