**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| IRMA ROMO and XENIA ROMO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | C.A. No.: CPU4-12-004124 |
| v. | ) | |
| | ) | |
| DONEGAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: July 7, 2014
Decided:  August 8, 2014

Robin M. Grogan, Esquire
Bifferato Gentilotti, LLC
200 Biddle Avenue, Suite 100
Newark, DE 19702
    *Attorney for Plaintiffs*

Colin M. Shalk, Esquire
Casarino Christman Shalk Ransom
& Doss, P.A.
405 North King Street, Suite 300
Wilmington, DE 19899
    *Attorney for Defendant*

**DECISION AFTER TRIAL**

**SMALLS, C. J.**

**INTRODUCTION**

This is a breach of contract action arising from an alleged breach of an insurance policy ("the policy") between Plaintiff Irma Romo (hereinafter "Romo") and Donegal Insurance (hereinafter "Donegal").[1] Trial was held on August 7, 2014.[2] This is the Court's decision on the claims brought by Mrs. Romo

**FACTUAL BACKGROUND**

From the testimony and evidence presented at trial, and taking into account any conflicts that arose in the testimony, the following are the facts as the Court finds them. Mrs. Romo worked as a construction flagger for Cirillo Brothers, Inc., commencing in 2002 (hereinafter "Cirillo"). Her job required her to stand up for long periods of time, lift items which weigh up to 15 pounds, and work in excess of 12 hours per day.

On November 19, 2011, Mrs. Romo and other members of her family were involved in a car accident where her vehicle was struck by a dump truck ("the accident"). Mrs. Romo was transported to Christiana Hospital with chest, neck, and lower back injuries, in addition to bruising. At the hospital, she received medicine, underwent a CAT scan, an MRI, and was kept overnight. Following her release from the hospital, Mrs. Romo sought medical care for her injuries from Dr. Angela Saldarriaga ("Dr. Saldarriaga"), her primary care physician. Dr. Saldarriaga provided Mrs. Romo with medicine, and directed her to undergo physical therapy. Mrs. Romo also had an MRI of her back performed in March of 2012. This course of treatment offered only temporary relief of Mrs. Romo's back and neck pain.

---

[1] Mrs. Romo had an insurance policy with Donegal that she purchased around 2000. The policy was effective from January 20, 2011 through January 20, 2012, and included personal injury protection.

[2] Xenia Romo's action against Donegal Insurance settled prior to trial.

In April of 2012, Dr. Saldarriaga recommended Dr. Craig Sternberg, M.D. ("Dr. Sternberg")[3] to Mrs. Romo, as she was continuing to complain of sharp pain in her hands, feet, and lower back, and was experiencing numbness in her neck. Dr. Sternberg evaluated the March 2012 MRI and found small disc herniations and some degenerative changes. He also found a disc extrusion. Dr. Sternberg testified that he believe that Mrs. Romo's herniations and extrusions were caused by the accident. At that time, Dr. Sternberg did not believe that Mrs. Romo was capable of returning to work as a flagger. Dr. Sternberg provided Mrs. Romo with physical therapy, which offered only temporary relief of her symptoms.

Dr. Sternberg also ordered a functional capacity evaluation (hereinafter "FCE") to gauge Mrs. Romo's ability to perform the daily tasks associated with her job.[4] The FCE was performed on July 10, 2012, and Mrs. Romo stopped physical therapy around the same time. On July 12, 2012, after the FCE and at the conclusion of her physical therapy treatments, Mrs. Romo testified that she informed Dr. Sternberg that the pain was worse. Mrs. Romo discussed the results of the FCE with Dr. Sternberg and Dr. Saldarriaga, both of whom told her that she could not return to

---

[3] Dr. Sternberg is a physical medicine and rehabilitation specialist at Delaware Back Pain & Sports Rehabilitation. Dr. Sternberg focuses his practice on individuals with neck and back injuries. *See* Sternberg Dep. pp. 5-8 (July 3, 2014).

[4] The FCE was administered by Trevor Ennis (hereinafter "Ennis"), who at the time of the exam worked in Dr. Sternberg's office as the office chiropractor. Ennis was trained to administer the evaluation. The FCE required Mrs. Romo to lift and carry items of various weights, remain standing for an extended period of time, place marbles on a tray to determine hand strength, and to engage in other scenarios related to her work. The FCE attempts to be as objective as possible by observing the heart rate and pulse of the patient while he or she is engaged in the tasks. Ennis also administered a physical efforts test to ensure that Mrs. Romo was giving maximum effort to the FCE. The results revealed that Mrs. Romo was using her full effort in the testing phase. The FCE takes approximately three (3) to four (4) hours to complete. At the conclusion, Ennis sent a written analysis and recommendation to the ordering physician, Dr. Sternberg. The analysis includes a detailed "construction industry classification" for a flagger, which provides the evaluator with background on the job requirements for a flagger.

3

work unless she was only performing sedentary office work.[5] Mrs. Romo contacted her supervisor at Cirillo, who informed her that they did not have any office work available for her to perform. As a result, Dr. Sternberg advised Mrs. Romo not to work, and he continued to provide her with doctor's notes to give to her employer, stating that Mrs. Romo can only perform sedentary work. Dr. Sternberg provided Mrs. Romo with these notes through March 21, 2013. Dr. Sternberg testified that he believed Mrs. Romo's injuries were permanent, and he concluded that it was unlikely that Mrs. Romo could have returned to work through November 19, 2013.

On July 6, 2012, Mrs. Romo saw Donegal's insurance defense doctor, Dr. Robert D. Keehn, M.D.[6] Dr. Keehn saw Mrs. Romo for approximately 10 to 15 minutes at Independent Medical Evaluations Delaware (IMED), during which time he conducted an evaluation of her injuries.[7] Mrs. Romo categorized her pain around a two (2) or three (3) out of ten (10) on the pain scale, with ten (10) being the most painful. Mrs. Romo was able to perform walking demonstrations and other activities with minimal complaints. According to Dr. Keehn's testimony, Mrs. Romo also tested negative for disc herniations, and he did not find any spinal issues that could have been caused by the accident. Dr. Keehn was also provided with the complete FCE report, which he stated he does not normally use for his patients. Dr. Keehn, after

---

[5] Dr. Sternberg testified, "it was recommended…initially it would be sedentary work with a 10-pound lifting restriction, starting part time and gradually increasing over a four- to eight- week period to a full-time job. And also, with frequent sitting, with allowance for change in position after every hour, and she could stand with change in position after every 20 to 25 minutes. …So, essentially, a sedentary-type position, starting part time, going to full time." Sternberg Dep. pp. 29-30, ln. 13-18. Dr. Sternberg later stated that he was under the impression that Mrs. Romo's potential full-time work would also have the weight, standing, and sitting restrictions. Sternberg Dep. p. 51, ln. 18-24.

[6] Dr. Keehn is an orthopaedic surgeon with OrthoMaryland. He is a general orthopaedist, who devotes 20 percent of his time to pediatrics, and 80 percent to the general practice.

[7] Dr. Keehn asked basic questions regarding Mrs. Romo's complaints and analyzing her medical records. Mrs. Romo did not fill out the medical history questionnaire provided by Dr. Keehn at the behest of her attorney.

his evaluation of Mrs. Romo and review of the FCE and supporting documents, determined that Mrs. Romo could return to work full time.[8] However, Dr. Keehn testified that he did not see a job description for a flagger and based his conclusions on observations of flaggers on the road in general. He further testified that he did not specifically know what the job's lifting requirements were because he did not have a job description.[9] As a result, Donegal mailed Mrs. Romo a letter stating that she was no longer eligible to receive lost wages as a result of her injury.[10]

Mrs. Romo saw Dr. Keehn one year later, June 16, 2013. At this evaluation, Mrs. Romo stated that her pain had increased to a nine (9) or ten (10) out of ten (10). Dr. Keehn conducted a similar exam to that which he performed in 2012, and determined that Mrs. Romo was exaggerating her pain, as her complaints were not supported by any medical reports or tests.

Mrs. Romo continued to treat with Dr. Sternberg through March of 2013, and Dr. Sternberg continued to provide her with notes for her work stating that due to her injuries, she could not return to work as a flagger, but she could work in a sedentary position. Mrs. Romo also sought treatment from a Dr. Moran in April of 2013. Dr. Moran performed acupuncture and provided Mrs. Romo with injections. Dr. Moran notified Mrs. Romo that if her pain continued, she would ultimately require surgery.

---

[8] Dr. Keehn testified that Mrs. Romo's symptoms did not correlate with the reports and medical documentation. Dr. Keehn ultimately determined that Mrs. Romo had a soft tissue strain or sprain that was associated with the accident. Dr. Keehn believed that Mrs. Romo was receiving a proper course of treatment at that time, but did not believe that she needed to continue receiving treatment.

[9] Keehn Dep. p. 49 (May 2, 2014).

[10] Pl. Ex. G. At the time of this letter, Mrs. Romo had $27,023.51 left in lost wage coverage under her insurance policy.

**DISCUSSION**

In order to succeed on a breach of contract claim, Mrs. Romo must prove the following elements by a preponderance of the evidence: (1) the existence of a contract; (2) that defendant breached an obligation imposed by the contract; and (3) that plaintiff incurred damages as a result of the breach.[11]

### I. A CONTRACT DID EXIST BETWEEN THE PARTIES

Both parties stipulated to the existence of the insurance policy, which covers income loss for an insured within two years of the date of the accident.[12] The policy was in effect on the date of the accident.[13] Therefore, the Plaintiff has proven the existence of a contract by a preponderance of the evidence.

### II. DONEGAL INSURANCE BREACHED THE POLICY TERMS BY FAILING TO PROVIDE LOST WAGES TO MRS. ROMO PURSUANT TO THE POLICY

Under the insurance policy, "personal injury benefits consist of … [l]oss of wages, salary or their equivalent, net of taxes, for work an 'insured' would have performed had he not been injured."[14] "Insured" under the policy, is "[a]ny person injured while 'occupying' 'your covered auto.'"[15] Mrs. Romo was an insured under the policy, as she was injured while seated in a vehicle driven by Xenia Romo, which was covered under this policy.[16]

---

[11] *VLIW Tech., LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003).
[12] Pl. Ex. C. "Personal Protection Coverage- Delaware," p. 2.
[13] The policy was in effect from January 20, 2011 through January 20, 2012.
[14] Pl. Ex. 1(C), "Personal Protection Coverage- Delaware," p. 2.
[15] *Id.*
[16] Pl. Ex. 1(C), "Amended Declaration," p. 1.

6

Mrs. Romo was injured as a result of the accident on November 19, 2011.  She received treatment at Christiana hospital, and then sought care from her primary care physician, Dr. Saldarriaga.  Dr. Saldarriaga later recommended that Mrs. Romo seek treatment from Dr. Sternberg, who treated Mrs. Romo from April of 2012 through March of 2013, nearly one full year.  Dr. Sternberg's course of treatment, which included physical therapy, appeared to alleviate Mrs. Romo's pain.  However, once the therapy treatments stopped, Mrs. Romo's pain returned, and to a greater degree.  Due to her continued treatment, Dr. Sternberg ordered an FCE.  The FCE contained a description of Mrs. Romo's job as a flagger, which specifies the work Mrs. Romo would typically perform on a job site, including the amount of time she would work each day, and a chart that outlined a flagger's essential functions such as frequent and constant walking a standing, with occasional sitting.[17]  In the "Recommendations" section of the FCE, Ennis opines that Mrs. Romo could return to work on a part-time basis, with restrictions on the hours she can work, the amount of time she can remain sitting and standing, and the amount of weight she can lift.  The recommendation ultimately concludes that Mrs. Romo should perform only sedentary work.  Dr. Sternberg testified that because he believed Ennis made the recommendation for sedentary work with the knowledge that Mrs. Romo's job was not sedentary, the recommendation thus prevented Mrs. Romo from returning to her position as a flagger.  Dr. Sternberg therefore continued to write notes excusing Mrs. Romo from work, and also asked Mrs. Romo to inquire about available sedentary (office) positions with Cirillo.

Dr. Keehn testified that he believed, from his two 10- to 15-minute appointments with Mrs. Romo, that Mrs. Romo was perfectly capable of returning to work.  The appointments mainly consisted of Dr. Keehn briefly observing Mrs. Romo, and looking at her medical history

---

[17] Pl. Ex. 1(F), p. 6.

and records. Dr. Keehn testified that he does not normally order FCEs, and that while he briefly read the FCE at the second appointment with Mrs. Romo, he did not read the description of her job as a flagger. Dr. Keehn testified that he made his determination that Mrs. Romo could return to work off of his own personal experiences and subjective impression of the work a flagger performs on a daily basis. "I didn't see a job description specifically. I just know what I believe from just observing flaggers on the roads in general."[18] Dr. Keehn testified that he does not know how long she was expected to stand, what bending requirements there were, or what her lifting requirements were. Although Dr. Keehn expressed concern that Mrs. Romo's pain levels severely increased at her second appointment, he noted that she appeared to be exaggerating some of her injuries.

In contrast, Dr. Sternberg noted that Mrs. Romo experienced increased pain levels after she had stopped participating in physical therapy, and after she had to undergo the FCE. Mrs. Romo previously testified that she had always experienced greater degrees of pain when she stopped physical therapy. Dr. Sternberg specifically testified, "I saw nothing in the time until…she had stopped coming to our office that would have changed that she would have been able to do anything more than sedentary."[19] The testimony, therefore, remains consistent about the increase in pain levels. Dr. Sternberg, in response to Mrs. Romo's complaints about her pain, continued to follow the recommendations in the FCE, and issued Mrs. Romo the notes excusing her from work as a flagger. Dr. Sternberg evaluated Mrs. Romo over the course of one year, and the Court is satisfied that he had a better understanding of the pain levels and work ability of Mrs. Romo than did Dr. Keehn. The testimony in the record does not support a basis that Dr. Keehn properly evaluated Mrs. Romo to the extent that he could glean a full understanding of

---

[18] Keehn Dep. p. 49 ln. 10-23.
[19] Sternberg Dep. p. 66 ln. 12-16.

8

her circumstances and pain levels. The Court finds Dr. Sternberg's monthly assessments and reliance upon the FCE more reliable in this matter.

The Court believes that Mrs. Romo's injuries and pain levels increased after her conclusion of physical therapy and after she underwent the FCE. Mrs. Romo's pain did not subside prior to November 19, 2013, the final date upon which she was eligible to receive lost wages from Donegal, and therefore she should have received payments from Donegal through that date. Donegal prematurely terminated Mrs. Romo's benefits after receiving Dr. Keehn's report. Therefore, Mrs. Romo has proven a breach of contract by a preponderance of the evidence.

### III. DAMAGES RECOVERABLE

The amount of damages recoverable in a breach of contract action is "the expectation interest of the non-breaching party."[20] The damages cannot be speculative, and the party must prove the damages to a reasonable certainty.[21]

Mrs. Romo was entitled to receive lost wage benefits through November 19, 2013. Mrs. Romo had $27,023.51 remaining in coverage under her policy, which is the maximum amount recoverable as damages in this matter. Mrs. Romo's counsel provided the Court with a calculation of the damages based upon the wages Mrs. Romo earned in 2011 only, and concluded that Mrs. Romo made $483.06 per week, multiplied by the 76 weeks she was not paid lost wages, for a total of $36,717.56.[22] The Court agrees with these calculations, but notes that

---

[20] *Munro v. Beazer Home Corporation, et al.*, C.A. No. U608-03-081, at *11 (Del. C. P., June 23, 2011)(citing *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 445 (Del. 1996)).
[21] *Munro*, at *11 (citing *LaPoint v. AmerisourceBergen Corp.*, 2007 WL 2565709, at *9 (Del. Ch. Sept. 4, 2007), *aff'd sum nom. AmerisourceBergen Corp. v. LaPoint*, 956 A.2d 652 (Del. 2008).
[22] Pl. Ex. E.

the total is higher than the policy limits. Therefore, Mrs. Romo is limited to the policy limit, or $27,023.51.

Accordingly, the Court finds in favor of Mrs. Romo on her breach of contract claim for unpaid lost wages owed to her by Donegal Insurance.

## CONCLUSION

For the foregoing reasons, the Court finds in favor of Plaintiff Irma Romo and awards the amount of $27,023.51, court costs, and post-judgment interest at the legal rate of until paid in full.

**IT IS SO ORDERED.**

_____
The Honorable Alex J. Smalls,
Chief Judge