VLIW TECHNOLOGY, LLC, a Delaware limited liability company, Plaintiff Below, Appellant,

v.

HEWLETT–PACKARD COMPANY and STMicroelectronics, Inc., Delaware corporations, Defendants Below, Appellees.

No. 305,2003.

Supreme Court of Delaware.

Submitted: Sept. 23, 2003.
Decided: Dec. 19, 2003.

---

27. *State v. Amad,* 767 A.2d 806 (Del.Super.1999), *aff'd,* 755 A.2d 386 (Del.2000) (TABLE).

Arthur G. Connolly, III, of Connolly, Bove, Lodge & Hutz, Wilmington, DE, Michael O. Warnecke (argued) and David R. Melton, Mayer, Brown, Rowe & Maw, Chicago, IL, Kevin M. McGovern and Brian T. Foley, McGovern & Associates, Greenwich, CT, J. Brett Busby, Mayer, Brown, Rowe & Maw, Houston, TX, and Donald M. Falk, Mayer, Brown, Rowe & Maw, Palo Alto, CA, for appellant, VLIW Technology, LLC.

Robert K. Payson, Philip A. Rovner and John M. Seaman, of Potter, Anderson & Corroon, Wilmington, DE, Roger D. Taylor (argued), Virginia L. Carron, and John D. Livingstone, Finnegan, Henderson, Farabow, Garrett & Dunner, Atlanta, GA, for appellee, Hewlett–Packard Company.

Allen M. Terrell, Jr. (argued), Jeffrey L. Moyer and Brock E. Czeschin, of Richards, Layton & Finger, Wilmington, DE, Bruce S. Sostek and Jane Politz Brandt, Thompson & Knight, Dallas, TX, for appellee, STMicroelectronics, Inc.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, Justices (constituting the Court en Banc).

HOLLAND, Justice:

The plaintiff-appellant, VLIW Technology, LLC ("VLIW"), filed an action for breach of contract, misuse of trade secrets,

and unfair trade practices against the defendants Hewlett–Packard Company ("H–P") and STMicroelectronics, Inc. ("STM"). The complaint asserts that H–P breached its contract with VLIW by sharing confidential information with STM. H–P filed a motion to dismiss the complaint pursuant to Court of Chancery Rule 12(b)(6). STM joined that motion. The Court of Chancery granted both of the defendants' motions.

VLIW has raised three issues on appeal. First, VLIW argues that its complaint adequately alleged that H–P breached their contract by using the licensed technology in its partnership with STM. Second, VLIW argues that, because its complaint stated a proper claim for breach of contract, the trade secret and unfair trade practice claims should also be reinstated. Finally, VLIW contends that, because STM filed its answer before joining H–P's 12(b)(6) motion, STM has waived this objection and the dismissal as to STM should be reversed.

We have concluded that the Court of Chancery should not have granted either of the defendants' motions to dismiss. Therefore, the judgments must be reversed and all claims against H–P and STM reinstated.

### Facts

The complaint alleges that in May 1990, H–P entered into an agreement ("Agreement" or "1990 Agreement") with Multiflow Computer Inc. ("Multiflow"). Under the terms of this agreement, Multiflow granted H–P a perpetual license to a bundle of technology, which included certain of Multiflow's "Intellectual Property Rights," in exchange for a lump sum payment. Included in these rights was a software program called the Trace compiler.

According to the complaint, the Trace compiler uses "very long instruction word" programming to make certain computer hardware perform more than one operation at a time (parallel) with great efficiency. The Trace complier is alleged to be especially versatile because it can be configured to work with a variety of computers and computer chips that have varying abilities to perform multiple operations in parallel.

The complaint alleges that the nature of many of the software methodologies and routines used in the compiler, as well as the way they were combined in the complier, were valuable trade secrets not generally known in the industry. Accordingly, Multiflow treated the details concerning the operations of the Trace complier as trade secrets. The complaint states that Multiflow and its successors have taken reasonable steps to protect the confidentiality of the Trace compiler's operational details.

The 1990 Agreement included in its definition of "Intellectual Property Rights" to be licensed, "all trade secrets and all trade secrets rights," before continuing on to address rights under other forms of intellectual property protection. Certain limitations were placed on the licensing of Multiflow's intellectual property rights. First, H–P was authorized to use Multiflow's intellectual property—including information related to the Trace compiler—in H–P products only. No definition of what constituted an H–P product was included in the Agreement. Second, the Agreement contained confidentiality obligations for H–P regarding the licensed technology. The source code for the Trace complier, as well as associated materials, were labeled as "confidential information." Paragraph 6.3 of the Agreement provided that:

> For a period of five years from the Effective Date, HEWLETT PACKARD shall use the same level of care HEW-

LETT PACKARD employs with its own confidential information of like importance in avoiding any disclosure or use of Confidential Information not authorized pursuant to the licenses granted under this Agreement. Nothing in this Agreement shall prevent the disclosure, distribution or sublicense of those portions of the Licensed Technology that are Confidential Information to a third party for the purpose of making, using having made or selling or otherwise disposing of HEWLETT PACKARD products.

Paragraph 6.5 of the Agreement also stated that "HEWLETT PACKARD shall not be obligated to hold in confidence, and shall not be subject to the confidentiality obligations of this Article 6 with respect to any Confidential Information which" H–P already possessed or was known to H–P, is or becomes public knowledge, or is available to H–P without a confidentiality restriction.

In June of 1991, Multiflow went out of business. As a result, Multiflow sold all of its remaining assets, including its intellectual property assets to TLI, a Connecticut corporation that was formed in May 1991 for the purpose of succeeding to and pursuing licensing of Multiflow's intellectual property rights. In November 2000, all of TLI's assets, including information relating to the Trace compiler, were transferred to VLIW, LLC.

According to the complaint, in late 1999, H–P and STM formed a research and development partnership. The purpose of the partnership was to work on the design and development of computer chips and other computer products that use the "very long instruction word" technology. The complaint alleges that in the course of their partnership, H–P shared derivatives of the Trace compiler with STM.

The complaint further alleges that STM used the derivatives of the Trace compiler in designing chips that use "very long instruction word" technology. According to the complaint, the product actually developed by the H–PSTM partnership is a "descendant" of the Trace compiler. STM never executed a licensing agreement with Multiflow or its successors.

### Court of Chancery Proceedings

VLIW flied an action in the Court of Chancery alleging six counts of breach of contract and misuse of trade secrets by H–P and STM. The complaint alleged that H–P breached its contract with VLIW, misappropriated trade secrets, and committed unfair trade practices by disclosing the technology to STM. The complaint also alleged that STM misappropriated trade secrets and committed unfair trade practices.

H–P filed a motion to dismiss, pursuant to Court of Chancery Rule 12(b)(6), arguing that VLIW had failed to state a claim for breach of contract. STM subsequently joined in that motion. The Court of Chancery held that VLIW had not stated a claim for breach of contract because the confidentiality provisions of the contract had expired. The Court of Chancery also dismissed VLIW's trade secret and unfair practice claims on the basis that those claims were premised on the breach of contract claim.

### Standard of Review

This Court reviews a dismissal of a complaint under Court of Chancery Rule 12(b)(6) *de novo*.[1] "This Court, like the trial court, must determine whether it appears with reasonable certainty that, un-

---

1. *In re Santa Fe Pac. Corp. Shareholder Litig.,* 669 A.2d 59, 70 (Del.1995).

der any set of facts that could be proven to support the claims asserted, the plaintiffs would not be entitled to relief.' "[2] That determination by this Court, as in the trial court, is generally limited to the factual allegations contained in the complaint.[3] In certain circumstances, however, when ruling upon a motion to dismiss, it is proper for the trial judge to consider a document attached to the complaint when the document is integral to a plaintiff's claim.[4]

■■■ On appeal, facts alleged in the complaint must be taken as true and all inferences therefrom are viewed in a light most favorable to the plaintiff.[5] Accepting as true all well-pleaded allegations in a complaint, the trial court's denial of the motion is erroneous only if a "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[6] An allegation, though vague or lacking in detail, is nevertheless "well-pleaded" if it puts the opposing party on notice of the claim being brought against it.[7]

### Pleading Requirements

■■■ In alleging a breach of contract, a plaintiff need not plead specific facts to state an actionable claim. Rather, a complaint for breach of contract is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."[8] Such a statement must only give the defendant fair notice of a claim and is to be liberally construed.[9]

■■■ A complaint that gives fair notice "shifts to the defendant the burden to determine the details of the cause of action by way of discovery for the purpose of raising legal defenses."[10] Accordingly, under Delaware's judicial system of notice pleading, a plaintiff need not plead evidence. Rather, the plaintiff need only allege facts that, if true, state a claim upon which relief can be granted.

### VLIW's Argument

VLIW contends that the Court of Chancery erred in applying the notice standards of Delaware's pleading requirements. VLIW argues that it adequately alleged that H–P breached the Agreement, in that it claimed that H–P was using the licensed technology in its partnership with STM. VLIW contends that it adequately alleged this breach in two ways: first, by alleging that H–P used the licensed technology in non-H-P products, and second, by alleging that H–P disclosed confidential information to STM.

2. *McMullin v. Beran*, 765 A.2d 910, 916 (Del. 2000) (quoting *In re Tri–Star Pictures, Inc. Litig.*, 634 A.2d 319, 326 (Del.1993)).

3. *McMullin v. Beran*, 765 A.2d at 916; *Vanderbilt Income and Growth Assocs. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 612–13 (Del.1996).

4. *In re Santa Fe Pac. Corp. Shardholder Litig.*, 669 A.2d at 69–70.

5. *McMullin v. Beran*, 765 A.2d at 916.

6. *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.*, 654 A.2d 403, 406 (Del.1995) (quoting *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 227 (Del.1982)).

7. *Savor, Inc. v. FMR Corp.*, 812 A.2d 894 (Del.2002); *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.*, 654 A.2d at 406.

8. Court of Chancery Rule 8(a)(1).

9. *Michelson v. Duncan*, 407 A.2d 211, 217 (Del.1979); *see also Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This simplified pleading standard applies to all civil actions, with limited exceptions. Court of Chancery Rule 9(b), for example, requires greater particularity in all averments of fraud or mistake.

10. *Klein v. Sunbeam Corp.*, 94 A.2d 385, 391 (Del.1952).

Because the provisions in the Agreement concerning confidentiality and what constitutes an "H–P product" are ambiguous, VLIW argues, all reasonable inferences as to their meaning should have been construed in favor of VLIW for purposes of deciding the defendants' 12(b)(6) motions to dismiss. Under such a circumstance, VLIW argues that its complaint was sufficient to meet Delaware's notice pleading standard. We agree.

### Breach of Contract

 In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff.[11] VLIW's complaint met this burden by averring that a contract between VILW and H–P existed, that the licensed technology was being used in an H–P/STM product in contravention of the Agreement, and that VLIW was damaged as a result. The allegation of these facts in the VLIW complaint was sufficient to put the defendants, H–P and STM, on notice of VLIW's claims against them.

First, VLIW's complaint alleges that Multiflow, VLIW's predecessor in interest, entered into a license agreement with H–P in 1990.[12] Alleging that the Agreement was for a limited purpose and contained certain restrictions on H–P's use of the licensed technology, the complaint avers certain contractual obligations of H–P. The complaint bases these obligations on VLIW's reading of Paragraph 2.1 of the Agreement, which "grants HEWLETT PACKARD a ... perpetual ... license ... to use and sublicense the use of Licensed Technology for the purpose of making, using, having made, selling and otherwise disposing of HEWLETT PACKARD products."

Second, VLIW's complaint alleges a breach of those obligations. The complaint states that "the technology in question has been improperly shared by H–P with STM and is now being used in unauthorized ways." According to the complaint:

Under the 1990 Agreement, H–P was only entitled to utilize the Multiflow trade secrets and know-how related to the Trace compiler in H–P products. H–P was not authorized to share those trade secrets and that know-how with other manufacturers nor was H–P authorized to give away or resell derivatives of the Trace compiler, other than as part of H–P products.

The complaint implicates STM by alleging that H–P and STM had formed a partnership to develop computer products, that STM designed these products using derivatives of the Trace compiler, and that the H–P/STM partnership marketed an element of those products as a "descendant" of the Trace compiler. The complaint refers to an attached exhibit showing that

---

**11.** *Winston v. Mandor,* 710 A.2d 835, 840 (Del.Ch.1997); *Moore Bus. Forms, Inc. v. Cordant Holdings Corp.,* Del. Ch., C.A. No. 13911, Jacobs, V.C. (Nov. 2, 1995), 1995 WL 662685, at *7; *Goodrich v. E.F. Hutton Group, Inc.,* 542 A.2d 1200, 1203–04 (Del.Ch.1988); Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1235.

**12.** The Court of Chancery noted that although VLIW alleged the existence of the 1990 Agreement, VLIW attached an unsigned draft to its complaint. For purposes of ruling upon the defendants' 12(b)(6) motion, the Court of Chancery assumed that the unexecuted copy of the 1990 Agreement attached to VLIW's complaint was the same contract that was ultimately executed by H–P and Multiflow. For purposes of this appeal, we make the same assumption.

the product developed by the H–P/STM partnership bore an "ST" product designation. VLIW's complaint alleges that "H–P has breached its obligations under the 1990 Agreement by sharing trade secrets and know-how related to the Trace compiler with STM."

Third, the complaint alleges that VLIW, "as the successor to the Multiflow rights in question, has been damaged by H–P's breach of the 1990 Agreement." Thus, VLIW's complaint alleged the existence of a contract, the breach of that contract by H–P with the involvement of STM, and damages resulting from that breach. Accordingly, both of the defendants were on fair notice of the claims that VLIW asserted against them.

### Reasons For Dismissal

Nevertheless, the Court of Chancery dismissed VLIW's complaint on two separate grounds. First, it found that the confidentiality provisions in the Agreement had expired in 1995 and, therefore, were no longer binding on H–P. Second, it found that VLIW had failed to allege that H–P shared the licensed technology for use in non-H–P products. In granting the defendants' motion to dismiss, however, the Court of Chancery's analysis did not resolve in favor of the plaintiff all reasonable inferences from the facts alleged in the complaint and its attachments.

### Confidentiality Provisions

 The Court of Chancery granted the defendants' motion to dismiss for failure to state a claim of breach of contract, in part, on the basis that the confidentiality provisions of the 1990 Agreement expired in 1995. That conclusion was based on the language of Paragraph 6.3 of the Agreement, which provided that for a period of five years, H–P would use the "same level of care [H–P] employs with its own

confidential information of like importance, avoiding any disclosure or use of Confidential Information not authorized pursuant to the licenses granted under this Agreement." The effective date of the Agreement was May 30, 1990.

The Court of Chancery concluded that this confidentiality provision expired on May 30, 1995. VLIW's complaint alleges that H–P shared confidential information regarding the Trace compiler with STM in 1999. Therefore, the Court of Chancery concluded that, even if that fact were taken to be true, VLIW failed to state a claim upon which relief can be granted.

VLIW argues that the Court of Chancery's analysis fails to consider another reasonable reading of the scope of the confidentiality provisions in the Agreement. VLIW asserts that Paragraph 6.3 imposes a heightened level of confidentiality on the part of H–P for a period of five years. Following the expiration of the provision, a duty of confidentiality with respect to VLIW's confidential information still remains for H–P, though it is less than the enhanced duty of confidentiality required under Paragraph 6.3. VLIW argues that this reading of Paragraph 6.3 is reasonable when taken together with Paragraphs 2.1 and 6.5 of the Agreement.

Paragraph 2.1 grants H–P a perpetual license under Multiflow's intellectual property rights to use the licensed technology in H–P products. VLIW contends that this perpetual license is meaningless if the Agreement merely requires H–P to keep information regarding the licensed technology confidential for only five years. VLIW also argues that Paragraph 6.5 of the Agreement distinguishes between H–P's general obligation to keep the licensed technology confidential and its enhanced duties under Paragraph 6.3 to use the same level of care it employs to protect its own trade secrets.

Paragraph 6.5 begins, "HEWLETT PACKARD shall not be obligated to hold in confidence, and shall not be subject to the confidentiality obligations of this Article 6 [Confidentiality Provisions] with respect to any Confidential Information which...." The basis of VLIW's argument appears to be premised on the contention that the comma in the middle of the sentence separates two distinct confidentiality obligations.[13] The first alleged duty is that H–P "hold in confidence" the Confidential Information; the second is the duty imposed under Article 6, namely, the heightened duty of confidentiality under Paragraph 6.3.

VLIW's reading of the Agreement is reasonable. Accordingly, the five-year confidentiality requirement listed in Paragraph 6.3 is ambiguous. Therefore, the complaint should not have been dismissed on the basis that the confidentiality requirements had *clearly* expired.

### H–P Products Provision

■ Paragraph 2.1 of the Agreement limits H–P's use of the licensed technology to use in H–P products only. The Court of Chancery found that the complaint made only one allegation in that regard, *i.e.*, that "[d]erivatives of the Trace compiler were utilized by STM in designing chips that use VLIW technology." The Court of Chancery held that this allegation was insufficient to create an inference that H–P had disclosed confidential information to STM for the purpose of making an STM product. Accordingly, the Court of Chancery ruled that "[t]here is simply no allegation in the complaint that a product exists or will exist that is not an H–P product."

VLIW asserts that the Court of Chancery read the complaint too narrowly. According to VLIW, its complaint alleges

that H–P and STM formed a partnership for the purpose of designing and developing computer chips that use "very long instruction word" technology; that H–P shared derivatives of the Trace compiler with STM; that these derivatives were used by STM for the purpose of designing computer chips using this technology; and that a product described in the complaint as the H–P/STM complier is a copy or, at the very least, a "descendant" of the Trace complier.

The complaint referred to, and attached, an exhibit purported to be H–P literature showing the H–P/STM product as bearing an "ST" product designation, the ST200. VLIW submits that the attachment leads to a reasonable inference that the ST200 is an STM product and not an H–P product, because the product does not bear an "H–P" product designation. VLIW asserts that its complaint specifically alleges, and reasonably infers from the exhibit, that the result of the H–P/STM partnership is not strictly an H–P product, but an H–P/STM product.

The Agreement does not define what constitutes an "H–P product." In this context, the provision restricting use of the licensed technology to only H–P products is ambiguous. A reasonable interpretation of this provision is that it restricts use of the licensed technology to products that carry the "H–P" product designation, and not another company's product designation or a hybrid of the two. Accordingly, from the VLIW complaint one can reasonably infer that H–P disclosed confidential information to STM for the purpose of making a product that was not an H–P product.

### Ambiguous Provisions Prevent Dismissal

■ This Court has previously stated that "a claim may be dismissed if allega-

---

**13.** In other words, the placement of the comma here is used before the conjunction "and" to separate independent clauses in a compound sentence.

tions in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law." [14] In deciding a motion to dismiss, the trial court cannot choose between two differing reasonable interpretations of ambiguous provisions. [15] Dismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law. [16]

■ Ambiguity exists "when the provisions in controversy are reasonably or fairly susceptible of different interpretations." [17] The record reflects that the contract provisions regarding confidentiality and the limitation of use of the licensed technology to use in H–P products are ambiguous. As noted above, a reasonable person could conclude that the Agreement contains two separate levels of confidentiality: one that requires a heightened level of confidentiality for five years, and one that requires some lesser degree of confidentiality for the duration of the license. A reasonable person could also conclude that the Agreement restricts use of the licensed to technology to products that have only an H–P designation. .

Because the provisions at issue in the Agreement are susceptible to more than one reasonable interpretation, for purposes of deciding a motion to dismiss, their meaning must be construed in the light most favorable to the non-moving party. [18] A trial court must not dismiss any claim pursuant to Rule 12(b)(6) unless it appears with reasonable certainty that the plaintiff cannot prevail on any set of facts which

might be proven to support the allegations in the complaint. [19] Applying that standard to this case, we hold that the VLIW complaint adequately states a claim upon which relief can be granted.

### *Conclusion*

The judgment of the Court of Chancery is reversed. This matter is remanded for further proceedings in accordance with this opinion.

---

**14.** *Malpiede v. Townson,* 780 A.2d 1075, 1083 (Del.2001).

**15.** *Vanderbilt Income and Growth Assocs. v. Arvida/JMB Managers, Inc.,* 691 A.2d 609, 613 (Del.1996).

**16.** *Id.*

**17.** *Id.* (quoting *Kaiser Aluminum Corp. v. Matheson,* 681 A.2d 392, 395 (1996)).

**18.** *Savor, Inc. v. FMR Corp.,* 812 A.2d 894 (Del.2002); *McMullin v. Beran,* 765 A.2d 910, 916 (Del.2000).

**19.** *See Rabkin v. Philip A. Hunt Chem. Corp.,* 498 A.2d 1099, 1104 (Del.1985).