# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TOWER IPCO COMPANY LIMITED, )
)
)
     Plaintiff, )
)   C.A. No. N20C-10-133 ALR
     v. )
)
ECOINTERIORS CORP., )
)
     Defendant. )

Submitted: February 2, 2021
Decided: March 29, 2021

*Upon Defendant's Motion to Dismiss the Complaint*
**DENIED**

## MEMORANDUM OPINION

Joanna J. Cline, Esquire, Emily L. Wheatley, Esquire, Troutman Pepper Hamilton Sanders LLP, Wilmington Delaware, David E. Meadows, Esquire, Alexandra S. Peurach, Troutman Pepper Hamilton Sanders LLP, Atlanta, Georgia, Attorneys Plaintiff Tower IPCO Company Limited.

Andrea S. Brooks, Esquire, Wilks Law, LLC, Wilmington, Delaware, Attorney for Defendant EcoInteriors Corp.

**Rocanelli, J.**

This is a breach of contract case involving a licensing agreement for a patented floor covering product. Defendant EcoInteriors Corp. ("Licensor") is the owner, developer and manufacturer of SetaGrip—which uses a unique micro-suction system for installation of flooring. According to the Complaint, Licensor and Plaintiff Tower IPCO Company Limited ("Licensee") entered into a License Agreement ("Agreement") granting Licensee the exclusive right to manufacture, market, use and sell the Seta-Grip flooring system in certain defined markets, including the Home Center Market within the United States and its territories, expressly including The Home Depot.[1]

Licensee contends in the Complaint that Licensor has breached the Agreement by marketing and/or selling Seta-Grip to The Home Depot. Licensee also alleges that Licensor is actively attempting to sell SetaGrip on its website, both within the United States and abroad, without any attempt to exclude the Home Center Market

_____

[1] *See* Compl. Ex. A [hereinafter "License Agreement"]. Section 1.3 of the Agreement defines Home Center Market as:

> Stores a) that are comparable to The Home Depot, Lowes, Menards or Floor and Décor stores and b) that sell a wide range of home building and construction materials, home maintenance and repair products, home appliances, and a variety of household electrical products. As such, the term "Home Center Market" shall include, without limitation, The Home Depot, Lowes, Menards or Floor and Décor stores.

*Id.* § 1.3

1

from its online sale efforts.[2]  In response to Licensee's Complaint stating one count of breach of contract, Licensor filed a Motion to Dismiss pursuant to Superior Court Civil Rule 12(b)(6) on the grounds that Licensor retained *all* its rights under the Agreement, including the right to sell to The Home Depot.  According to Licensor, Licensee's "exclusive license" is "subject to" Licensor's ownership rights.  Thus, according to Licensor, Licensee's right to sell to The Home Depot is only exclusive *vis-à-vis* third parties but Licensee does not have an exclusive license with respect to Licensor itself.  Licensee opposes the motion to dismiss on the grounds that the Agreement granted Licensee an exclusive right to sell Seta-Grip to the Home Center Market, including to The Home Depot and including as to Licensor.

## LEGAL STANDARDS

### A. Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted,[3] the Court must read the complaint generously, accept all well-pleaded allegations contained therein as true, and draw all reasonable inferences in a light most favorable to the non-moving party.[4]  Although the Court's review is generally limited to the factual allegations contained in the complaint, under certain

---

[2] At oral argument on February 2, 2021, Licensee clarified that its breach of contract allegation with respect to Licensor's website is limited to Licensor's failure to exclude the Home Center Market from its website-based sale efforts.
[3] Super. Ct. Civil R. 12(b)(6).
[4] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

circumstances, "it is proper for the trial judge to consider a document attached to the complaint when the document is integral to a plaintiff's claim."[5]  Dismissal is warranted only when the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[6]  "Allegations that are merely conclusory and lacking factual basis, however, will not survive a motion to dismiss."[7]

To survive a motion to dismiss for failure to state a claim for breach of contract the plaintiff must demonstrate: (1) existence of the contract, whether express or implied; (2) breach by the defendant of an obligation imposed by that contract; and (3) resulting damages to the plaintiff.[8]  "In alleging a breach of contract, a plaintiff need not plead specific facts to state an actionable claim."[9]  Rather, a complaint for breach of contract is sufficient if it contains "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief."[10]

---

[5] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003).

[6] *Ridley v. Bayhealth Med. Ctr., Inc.*, 2018 WL 1567609, at *3 (Del. Super. Mar. 20, 2018) (internal quotation marks omitted) (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 168).

[7] *Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945, at *7 (Del. Super. June 6, 2012) (quoting *Criden v. Steinberg*, 2000 WL 354390, at *2 (Del. Ch. Mar. 23, 2000)).

[8] *VLIW Tech., LLC*, 840 A.2d at 612.

[9] *Id.* at 611.

[10] Super. Ct. Civ. R. 8(a)(1).

3

"Dismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law."[11]

## B. Contract Interpretation

Under Delaware law, clear and unambiguous contract terms are interpreted according to their ordinary and usual meaning.[12] Delaware law adheres to the objective theory of contracts, meaning this Court "'will give priority to the parties' intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions."[13] "Contracts are to be interpreted in a way that does not render any provisions 'illusory or meaningless.'"[14] Thus, "[c]ontract terms themselves will be controlling when they establish [] common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[15] Only where a contract is ambiguous must the interpreting court "look beyond the language of the contract to ascertain the parties' intentions."[16] However, "[a] contract is not

---

[11] *VLIW Tech., LLC*, 840 A.2d at 615.

[12] *La Grange Communities, LLC v. Cornell Glasgow, LLC*, 2013 WL 4816813, at *3 (Del. Sept. 9, 2013) (TABLE); *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012).

[13] *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) (quoting *GMG Cap. Inv., LLC*, 36 A.3d at 779).

[14] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del. 2001).

[15] *Salamone*, 106 A.3d at 368 (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

[16] *GMG Cap. Invs.*, 36 A.3d at 780 (quoting *Eagle Indus., Inc.*, 702 A.2d at 1232).

rendered ambiguous simply because the parties do not agree upon its proper construction."[17] Rather, contractual ambiguity exists "[w]hen the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings."[18]

## DISCUSSION

The central question of this litigation is whether Licensor retained an unlimited right to exploit its own patent for SetaGrip, including the right to sell to The Home Depot in direct competition with its Licensee. Licensor argues that a plain reading of Section 2.1 of the Agreement reveals that Licensor retained the right to utilize its own patent without any limitations. By contrast, Licensee argues that a plain reading of Section 2.1 means that Licensee, and no one else including Licensor, has the right to sell SetaGrip to The Home Depot.

Section 2.1 of the Agreement provides:

For duration of the Initial Term and subject to [Licensor's] rights and the terms and conditions of this Agreement, [Licensor] hereby grants to [Licensee] the exclusive right, except as otherwise limited in this Agreement, under the Intellectual Property Rights to make, have made, use, import, offer to sell and sell Licensed Products, but only in the Field of Use as defined in Section 1.2 and in the Territory of Use defined in Section 1.13. For the avoidance of doubt during the Initial Term no party other than [Licensor] and [Licensee] shall be permitted to make or have made products similar to or competitive with the Licensed Products and utilizing the Licensed Patents or Licensed Know-How. The right granted to [Licensee] herein shall continue

---

[17] *Id.* (quoting *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).

[18] *Salamone*, 106 A.3d at 369 (quoting *GMG Cap. Invs.*, 36 A.3d at 780).

5

to apply to any Extension Period (unless terminated earlier by either Party pursuant to Article 6 of this Agreement), but only on a non-exclusive basis.[19]

Licensor asserts that, according to *Martin Marietta Materials, Inc. v. Vulcan Materials Co.*,[20] Delaware courts have construed the phrase "subject to" as meaning "subordinate." Therefore, Licensor argues that a plain reading of Section 2.1 of the Agreement is that Licensor retained the right to utilize its own patent per the "*subject to* [Licensor's] rights" language in Section 2.1.[21]

Licensee argues that, under Delaware law, courts construe contracts as a whole and give effect to all provisions. Section 2.1 of the Agreement states that "[Licensor] hereby grants to [Licensee] *the exclusive right* . . . to make, have made, use, import, offer to sell and sell Licensed Products."[22] Licensee argues that the term "exclusive" means that Licensee, and no one else—including Licensor, has the right to sell SetaGrip to the Home Center Market, including to The Home Depot.

Reading the Agreement as a whole,[23] this Court agrees that Licensee's interpretation of the contract is reasonable. The Agreement enumerates specific rights retained by Licensor; for example, Licensor retains the right to sell SetaGrip

---

[19] License Agreement § 2.1.
[20] 56 A.3d 1072, 1124 (Del. Ch.), *aff'd,* 45 A.3d 148 (Del. 2012), and *aff'd,* 68 A.3d 1208 (Del. 2012), *as corrected* (July 12, 2012).
[21] License Agreement § 2.1 (emphasis added).
[22] *Id.* (emphasis added).
[23] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010) (acknowledging that Delaware reads contracts as a whole, giving each provision and term effect, so that any part of the contract is not rendered mere surplusage).

outside the floor covering industry,[24] as well as outside the Home Center Market,[25] including the US healthcare market,[26] the US educational market,[27] US flooring distributors including specialty stores,[28] and the US OEM manufacturing market.[29] In addition, Licensor retains ownership of its trademark[30] and patent, as well as the right of quality control. Furthermore, the Agreement specifies that Licensee is not granted exclusive use of the trademark[31] and requires Licensee to note the trademark[32] and patent in Licensee's sales and marketing materials.[33] The Agreement specifies that Licensee agrees not to challenge the Licensor's trademark[34] and agrees to certain quality control standards.[35] Accordingly,

---

[24] Section 1.2 of the Agreement defines "Field of Use" as "[t]he floor covering industry." License Agreement § 1.2.

[25] *See Id.* § 1.3.

[26] *Id.* "The term 'Home Center Market' shall not include (a) the U.S. healthcare market." *Id.*

[27] *Id.* "The term 'Home Center Market' shall not include . . . (b) the U.S. educational market." *Id.*

[28] *Id.* "The term 'Home Center Market' shall not include . . . (c) U.S. flooring distributors, including without limitation specialty flooring retail stores." *Id.*

[29] *Id.* "The term 'Home Center Market' shall not include . . . (d) the US OEM manufacturing market." *Id.*

[30] Agreement Section 3.2 provides "Licensor shall be the sole and exclusive owner of all right, title and interest throughout the entire world in and to the Licensed trademark . . . ." *Id.* § 3.2.

[31] Section 2.2 specifies that use of trademark by Licensee is "on a non-exclusive basis . . . ." *Id.* § 2.2.

[32] *Id.* § 3.1.

[33] *Id.* § 2.3.

[34] *Id.* § 3.2.

[35] *Id.* § 3.3.

7

Licensee's exclusive license *is subject to* these specifically enumerated rights which were retained by Licensor.

On the other hand, nowhere in the Agreement is the right to sell to The Home Depot reserved for or retained by Licensor. The contract term "exclusive" as applied to Licensee's rights would be rendered meaningless if it was not afforded its customary meaning. While the Agreement uses the term "exclusive" it does not define the term. "The Court interprets clear and unambiguous terms according to their plain and ordinary meaning."[36] As the term "exclusive" is not ambiguous, "exclusive" is assigned its plain meaning, and the Court turns to the dictionary definition for guidance.[37] Merriam-Webster defines "exclusive" as "excluding or having power to exclude" "limiting or limited in possession, control, or use by a

---

[36] *MTA Canada Royalty Corp. v. Compania Minera Pangea, S.A. de C.V.*, 2020 WL 5554161, at *5 (Del. Super. Sept. 16, 2020).

[37] Courts often look to dictionary definitions for guidance. *See Murfey v. WHC Ventures, LLC*, 236 A.3d 337, 346 n.32–33 (Del. 2020) (defining terms appearing in both a partnership agreement as well as a books-and-records statute); *Spintz v. Div. of Fam. Servs.*, 228 A.3d 691, 700 (Del. 2020) (using Black's Law Dictionary, Merriam-Webster's Dictionary, and Oxford's Dictionary to define the word "notice" in the Child Protection Registry Statute); *USAA Cas. Ins. Co. v. Carr*, 225 A.3d 357, 360 (Del. 2020) (citing to Merriam-Webster's Dictionary, Cambridge's Dictionary and Black's Law Dictionary to define the term "accident" that appears in an insurance policy); *but see Daniels v. State*, 2021 WL 248232, at *4 (Del. Jan. 26, 2021) (noting that dictionary definitions are helpful, but that "dictionaries may also reveal a linguistic pluralism"—inferring that definitions having a broad range of possible meanings should be used with caution).

single individual or group" and "excluding others from participation."[38] Thus, it is a reasonable to interpret the Agreement as granting a right that limits others from possession or control.

Here, consistent with the ordinary meaning of exclusivity and in consideration of the other specific rights retained by Licensor, it is reasonable to interpret the Agreement as providing that Licensee would be the only entity selling to the Home Center Market, including to The Home Depot. Moreover, because the Agreement specifies numerous rights retained by Licensor, it is reasonable to interpret the term "subject to" without using the phrase to qualify Licensee's exclusive license to sell to the Home Center Market, including to The Home Depot.

"In deciding a motion to dismiss, the trial court cannot choose between two differing reasonable interpretations of ambiguous provisions."[39] Especially in the context of the entire Agreement, it is reasonable to reasonable interpret Licensee's exclusive license to mean that Licensee would not have to compete with Licensor in the marketing and sale of SetaGrip to the Home Center Market, including to The Home Depot. "Dismissal, pursuant to Rule 12(b)(6), is proper only if the

---

[38] *Exclusive*, MERRIAM-WEBSTER, https://www.merriamwebster.com/dictionary/exclusive (last visited Mar. 8, 2021).
[39] *VLIW Tech., LLC*, 840 A.2d at 615 (footnotes omitted) (citing *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996)).

defendants' interpretation is the *only* reasonable construction as a matter of law."[40] Where, as here, Licensee's interpretation that it had an exclusive license to sell to The Home Dept including as to Licensor is reasonable, Defendant's motion to dismiss must be denied.

## CONCLUSION

Licensor's interpretation of the contract is not the only reasonable interpretation. Considering the well-pleaded facts in the light most favorable to Licensee, sufficient facts have been pled by Licensee to support a claim for breach of contract based on a notice pleading standard.

**NOW, THEREFORE, this 29th day of March 2021, the Motion to Dismiss the Complaint is hereby DENIED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

**The Honorable Andrea L. Rocanelli**

---

[40] *VLIW Tech., LLC*, 840 A.2d at 615 (footnotes omitted) (citing *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996)).