# SUPERIOR COURT
## OF THE
## STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Submitted: December 6, 2024
Decided: December 17, 2024

Tammy L. Mercer, Esquire
Richard J. Thomas, Esquire
Andrew J. Czerkawski, Esquire
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
1000 N. King Street
Wilmington, Delaware 19801

David Baay, Esquire
L. Andrew S. Riccio, Esquire
Emily Brait, Esquire
BAKER & MCKENZIE LLP
452 Fifth Avenue
New York, New York 10018

Robert K. Beste, Esquire
SMITH, KATZENSTEIN & JENKINS LLP
1000 North West Street, Suite 1501
Wilmington, Delaware 19801

Gaddi Goren, Esquire
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, New York 10017

RE: *Bastion Restaurant Group LLC v. Alexandre Gaudelet*
C.A. No. N24C-06-190 PRW CCLD
Plaintiff's Motion to Dismiss
Defendant's Motion to Stay

Dear Counsel:

This Letter Decision and Order resolves Plaintiff Bastion's Motion to Dismiss

and Defendant Gaudelet's Motion to Stay. For the reasons now explained, Bastion's

Motion to Dismiss (D.I. 17) is **GRANTED, in part, and DENIED, in part.**

Mr. Gaudelet's Motion to Stay (D.I. 22) is **GRANTED**.

## I. FACTUAL BACKGROUND[1]

### A. THE RESTAURANT, THE LEASE, AND THE GUARANTY

Defendant Alexandre Gaudelet was a principal of InvestHospitality LLC ("IH").[2] IH created L'Atelier NYC LLC ("L'Atelier") to own and operate a restaurant called "L'Atelier de Joel Robuchon" in New York City.[3]

On November 1, 2016, L'Atelier entered into a lease agreement with 85 Tenth Avenue Associates ("Landlord").[4]

Mr. Gaudelet personally guaranteed the lease (the "Guaranty").[5] An unexecuted version of the Guaranty is incorporated into the lease as Exhibit D.[6] The Guaranty provides that Mr. Gaudelet's liability is "primary," and that the Landlord does not need to first seek recourse against L'Atelier.[7]

### B. BASTION ACQUIRES THE RESTAURANT.

In May 2018, Plaintiff Bastion Restaurant Group LLC ("Bastion") (f/k/a Crest

---

[1] The Court delivers this decision mindful that the parties are fully versed in the factual and procedural background of this litigation, as well as the arguments each makes on the instant motions. This writing, therefore, will only touch on the specifics of those as needed here.

[2] Compl. ¶ 10.

[3] *Id.*

[4] *Id.* ¶ 11.

[5] *Id.* ¶ 12.

[6] Guaranty (D.I. 18 at Ex. B).

[7] *Id.* ¶ 3.

Restaurant Acquisition, LLC), a Delaware limited liability company, acquired all interests in IH, via a Unit Purchase Agreement ("Agreement").[8]

### C. TERMS OF THE AGREEMENT

Pursuant to the Agreement, Bastion sought to release Mr. Gaudelet from the Guaranty.[9]

Specifically, Section 6.2 provides:

> Alex Gaudelet Indemnity. [Bastion] hereby agrees to indemnify, defend and hold harmless Alex from and against any and all Damages incurred or sustained by, or imposed upon, Alex resulting from, related to or arising out of any breach of the . . . Guaranty, dated as of November 1, 2016, Alex Gaudelet in favor of 85 Tenth Avenue Associates, L.L.C. . . . .[10]

"Damages" is defined as:

> All actual damages, costs, liabilities, obligations, fines, penalties, expenses and fees, including reasonable attorneys' and other professional fees and expenses; provided, that "Damages" shall not include . . . damages related to items set forth on the Company Disclosure Schedules . . . .[11]

The Company Disclosure Schedule is attached to the Agreement and includes

---

[8]   Compl. ¶ 13. *See also* Agreement (D.I. 21 at Ex. 2).

[9]   Agreement (Recitals).

[10]   *Id.* at Section 6.2.

[11]   *Id.* at Article 1 (Definitions).

in Schedule 3.12 a list of L'Atelier's leased real property.[12]  This section lists all leases by L'Atelier, any related agreements, and includes the Guaranty.[13]

### D. THE LANDLORD TERMINATES THE LEASE AND INITIATES THE NEW YORK ACTION.

As a result of the pandemic, the restaurant was allegedly not able to meet its obligations under the lease.  In turn, the Landlord initiated the New York Action in March 2022, naming L'Atelier and Mr. Gaudelet as defendants.[14]

The New York Action's complaint alleges that, pursuant to the lease, the Landlord gave Mr. Gaudelet and L'Atelier notice of default and notice of termination of the lease.[15]  Further, that complaint alleges that neither party paid rent after the alleged termination date.[16]  That complaint also alleges that Mr. Gaudelet is jointly and severally liable.[17]

## II. PROCEDURAL HISTORY

In June 2024, Bastion filed its Complaint here, asserting one count seeking a

---

[12]  Agreement at Schedule 3.12, Section 3.12(b).

[13]  *Id.*

[14]  Opening Brief ("Op. Br."), Ex. A (D.I. 18).

[15]  Op. Br., Ex. A. ¶¶ 9, 12.

[16]  *Id.* ¶ 16.

[17]  *Id.* ¶¶ 33, 37, 41.

declaratory judgment ("Count I").[18] Mr. Gaudelet answered and asserted two counterclaims, for breach of the Agreement ("Counterclaim I") and a declaratory judgment ("Counterclaim II").[19]

Bastion responded with a Motion to Dismiss the Counterclaims.[20] Along with Mr. Gaudelet's answering brief, he filed his Motion to Stay.[21] Bastion filed its reply supporting its motion to dismiss and opposing stay application.[22] After Mr. Gaudelet replied,[23] the Court heard argument.[24]

### III. STANDARD OF REVIEW

Under Superior Court Civil Rule 12(b)(6), a party can move to dismiss for failure to state a claim upon which relief can be granted.[25] In resolving a Rule 12(b)(6) motion, the Court "(1) accept[s] all well-pleaded factual allegations as true; (2) accept[s] even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, (3) draw[s] all reasonable inferences in favor of the non-moving

---

[18] *See generally* Compl.

[19] Answer and Counterclaims (D.I. 14).

[20] Motion to Dismiss (D.I. 17).

[21] Answering Brief ("Ans. Br.") (D.I. 21); Motion to Stay (D.I. 22).

[22] Reply (D.I. 26).

[23] Reply in Support of Motion to Stay (D.I. 31).

[24] D.I. 32.

[25] Del. Super. Ct. Civ. R. 12(b)(6).

party, and (4) [will not dismiss a claim] unless the [claimant] would not be entitled to recover under any reasonably conceivable set of circumstances."[26]  Delaware's pleading standard is "minimal."[27]  And dismissal is inappropriate unless "under no reasonable interpretation of the facts alleged could the [counterclaims] state a claim for which relief might be granted."[28]

## IV. PARTIES' CONTENTIONS

### A. COUNTERCLAIM I

With respect to Counterclaim I for breach of contract, Bastion pens three arguments for dismissal.  First, Bastion insists that Mr. Gaudelet's request for indemnification is premature because, as yet, there is no judgment against Mr. Gaudelet in the New York Action.[29]  Second, that Mr. Gaudelet has failed to state a claim for breach because he can't allege he has suffered any Agreement-defined "Damages"; that definition excludes anything mentioned on the Company Disclosure Schedule, and that schedule includes the Guaranty.[30]  Third, even if

---

[26]  *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

[27]  *Cent. Mortg.*, 27 A.3d at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 895 (Del. 2002)).

[28]  *Unbound P'rs Ltd. P'ship v. Invoy Hldgs. Inc.*, 251 A.3d 1016, 1023 (Del. Super. Ct. 2021) (internal quotation marks omitted); *see Cent. Mortg.*, 27 A.3d at 537 n.13 ("Our governing 'conceivability' standard is more akin to 'possibility' . . . .").

[29]  Op. Br. at 7-8.

[30]  *Id*.

Mr. Gaudelet were able to properly allege damages, the Agreement's indemnification provision only applies when Mr. Gaudelet is being sued for a "breach" of the Guaranty, and the Landlord in the New York Action hasn't alleged any such breach.[31]

Mr. Gaudelet counters that Counterclaim I is ripe because Bastion has asserted in its own Complaint that a controversy exists. This, he says, has waived Bastion's attempted affirmative defense.[32] In the alternative, if the Court disagrees and finds that questions regarding indemnification are premature, then Mr. Gaudelet asks the Court to stay this proceeding with respect to any indemnification-related claims.[33] Further, Mr. Gaudelet argues that a ripe controversy exists because Agreement Section 6.2 requires Bastion to defend him in—not just indemnify him for—the New York Action.[34] Second, Mr. Gaudelet argues that he has stated a claim for breach of the Agreement and has properly alleged damages because Section 6.2 of the Agreement itself explicitly references the Guaranty, and thus as a matter of contract interpretation it would not make sense that the parties intended to exclude

---

[31]  *Id.* at 8.

[32]  Ans. Br. at 18.

[33]  *Id.* at 22.

[34]  *Id.* at 18-19.

it from Section 6.2's purview via listing it on the Company Disclosure Schedule attached to the Agreement.[35]  Third, Mr. Gaudelet argues that the New York Action is alleging a breach of the Guaranty against him; the complaint in that action has not alleged that he is liable for any reason other than his role as Guarantor.[36]  Further, Mr. Gaudelet argues that Agreement Section 6.2 should be read in the disjunctive such that the clauses "resulting from," "related to" and "arising out of any breach" are separate.[37]

### B.  COUNTERCLAIM II

Bastion argues that Counterclaim II is duplicative of Count I, and thus should be dismissed for efficiency purposes.[38]

Mr. Gaudelet responds that Counterclaim II differs from Count I in that Counterclaim II includes a request that the Court declare that Bastion has a duty to defend Mr. Gaudelet in the New York Action, as opposed to just indemnify Mr. Gaudelet for any judgment that may result.[39]

---

[35]     *Id.* at 11-14.

[36]     *Id.* at 17.

[37]     *Id.* at 16.

[38]     Op. Br. at 9.

[39]     Ans. Br. at 22-23.

## V. DISCUSSION

### A. THE INDEMNIFICATION ISSUES ARE NOT RIPE.

Delaware's Declaratory Judgment Act empowers the Court to "declare rights, status and other legal relations whether or not further relief is or could be claimed."[40] But the Court often looks to see if there is an extant actual controversy before exercising declaratory judgment jurisdiction.[41] For an actual controversy to exist the case must be ripe.[42] "As to indemnity claims, Delaware courts decline to enter a declaratory judgment until there is a judgment against the party seeking it. What is more, indemnification claims do not accrue until the underlying claim is finally decided."[43]

Here, as both parties admit, the New York Action is still pending and no judgment has been entered against Mr. Gaudelet. Thus, any determination of Bastion's indemnification obligations under the Agreement is premature. While Mr. Gaudelet suggests that Bastion has "waived" this argument by its own complaint asserting that there is a controversy to be resolved now, ripeness is an issue of

---

[40] DEL. CODE ANN. tit. 10, § 6501 (2024).

[41] *Ham v. LinQuest Corp.*, 2024 WL 1850518, at *7 (Del. Super. Ct. Apr. 18, 2024).

[42] *Id.*

[43] *Id.*

justiciability.  And the Court always retains its ability to consider such justiciability issue at any time.[44]

### B. GRANTING MR. GAUDELET'S MOTION TO STAY WOULD PROMOTE AN ORDERLY AND EFFICIENT ADMINISTRATION OF JUSTICE.

The Court has discretion over whether to grant a motion to stay.[45]  In deciding on a stay, the Court should consider principles of comity and orderly and efficient administration of justice.[46]  In the context of staying indemnification claims, when underlying proceedings have commenced that could potentially trigger coverage, then an injury is "imminent" and the Court often stays actions to allow the underlying proceedings to conclude.[47]

As outlined above, the New York Action has been pending for about two years.  And it's just that action's resolution that is the potential trigger of Bastion's indemnification obligations.  If the New York Action results in a judgment against Mr. Gaudelet, then there's a substantial likelihood that the Court will need to decide Bastion's indemnification obligations.    The    alternative    to    staying    the

---

[44] *Emp'rs Ins. Co. of Wausau v. First State Orthopaedics, P.A.*, 312 A.3d 597, 613 (Del. 2024).

[45] *Yellow Pages Grp., LLC v. Ziplocal, LP*, 2015 WL 358279, at *4 (Del. Super. Ct. Jan. 27, 2015) (staying indemnification claim where that claim was not yet ripe).

[46] *Id.*

[47] *Lima USA, In. v. Mahfouz*, 2021 WL 5774394, at *14 (Del. Super. Ct. Aug. 31, 2021) (collecting cases).

indemnification claims would be to dismiss them. But that then would likely result in the parties just filing again in this Court at the conclusion of the New York Action.

In the interests of comity and efficiency, Mr. Gaudelet's Motion to Stay is **GRANTED**.

### C. MR. GAUDELET HAS ADEQUATELY PLED A BREACH OF THE AGREEMENT.

To plead a breach-of-contract claim, a party must allege: (1) the existence of a contract; (2) a breach of the contract; and (3) damages suffered as a result of the breach.[48]

**1. Bastion's interpretation of the Agreeement's definition of "Damages" isn't the *only* reasonable interpretation.**

Bastion insists that Mr. Gaudelet cannot plead damages because the Agreement's definition of "Damages" precludes any damages resulting from the Guaranty.[49] This argument stems from the fact that "Damages" as used in Agreement Section 6.2 is defined to exclude any damages related to items set forth on the Company Disclosure Schedules.[50] The Guaranty is listed on the Company Disclosure Schedule attached to the Agreement.[51] But, as Mr. Gaudelet points out,

---

[48]  *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *Ham*, 2024 WL 1850518, at *8.

[49]  Op. Br. at 7.

[50]  Agreement at Article 1 (Definitions).

[51]  *Id.* at Schedule 3.12, Section 3.12(b).

this is in conflict with the explicit wording of Section 6.2.  So, the Court must interpret this Agreement provision.

Contract interpretation is a question of law that might be resolved on a motion to dismiss.[52]  To succeed though, the movant's interpretation must be "the *only* reasonable construction as a matter of law."[53]  Otherwise, for purposes of deciding a 12(b)(6) motion, the language must be resolved in the non-movant's favor.[54]  Specific language in a contract controls over general language, and when in conflict, the specific language typically qualifies the general language.[55]  Interpretations that render a provision meaningless, or yield absurd results, must be rejected.[56]

Agreement Section 6.2 specifically states that Bastion agrees to indemnify and defend Mr. Gaudelet for "any and all Damages" he incurs "resulting from, related to or arising out of any breach" of the Guaranty.  If Bastion's interpretation of "Damages" is adopted, then this provision is essentially meaningless.  And the

---

[52]  *E.g.*, *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) ("Under Delaware law, the proper interpretation of language in a contract is a question of law. Accordingly, a motion to dismiss is a proper framework for determining the meaning of contract language.").

[53]  *VLIW Tech.*, 840 A.2d at 615 (citation omitted).

[54]  *Id.*; *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *8 (Del. Ch. Sept. 18, 2014) ("At the motion to dismiss stage, ambiguous contract provisions must be interpreted most favorably to the non-moving party.").

[55]  *Urvan v. Ammo, Inc.*, 2024 WL 863688, at *21 (Del. Ch. Mar. 14, 2024).

[56]  *E.g.*, *Manti Holdings, LLC v. Authentix Acquisitions Co.*, 261 A.3d 1199, 1211 (Del. 2021).

Court won't adopt an interpretation of the Agreement that renders any of its provisions meaningless.[57]  With the context of the Agreement's recitals indicating a desire to "release" Mr. Gaudelet from the Guaranty,[58] the Guaranty's inclusion on the Company Disclosure Schedule is as likely an oversight as it was intended.  Thus, Bastion has not carried its burden of showing that its read of Section 6.2 is the only reasonable construction.

**2. Section 6.2 should be read in the disjunctive, and even if it isn't, the New York Action, as it relates to Mr. Gaudelet, pertains to a breach of the Guaranty.**

Bastion argues, based on its reading of Section 6.2, that for the Agreement's indemnification provision to be triggered, the New York Action needs to assert a breach of the Guaranty.  While there is no hard-and-fast rule for this interpretation, generally courts read "and" as conjunctive while reading "or" as disjunctive.[59]  So in the norm, Agreement Section 6.2 would be read as requiring Bastion to indemnify and defend Mr. Gaudelet from damages "resulting from" the Guaranty, "related to" the Guaranty, and "arising out of any breach" of the Guaranty.  As such, the New York Action clearly would be covered.

---

[57]  *Id.*

[58]  Agreement (Recitals).

[59]  *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1045 (Del. 2023).

But even if read in the conjunctive as Bastion suggests, such that the complaint in the New York Action would need to assert a breach of the Guaranty for Bastion's obligations under Section 6.2 to be triggered, Counterlclaim I is still adequately pled.

The Guaranty provides that Mr. Gaudelet's liability is "primary" and that the Landlord doesn't need to first exhaust all remedies against L'Atelier.[60]  The New York Action's complaint alleges that, pursuant to the lease, the Landlord gave Mr. Gaudelet notice of default and notice of termination of the lease.[61]  Further, the complaint alleges that neither party paid rent after the alleged termination date.[62] And the complaint also alleges that Mr. Gaudelet is jointly and severally liable.[63] Thus, by alleging failure to remit payment when notified, the complaint in the New York Action states a claim against Mr. Gaudelet for breach of the Guaranty.

In addition, the Guaranty is also incorporated into the lease as Exhibit D.[64] Reading the New York Action's complaint in the light most favorable to Mr. Gaudelet, any references therein to a breach of the lease could be read as also alleging a breach of the Guaranty.

---

[60]  Guaranty ¶ 3.

[61]  Op. Br., Ex. A ¶¶ 9, 12.

[62]  *Id.* at ¶ 16.

[63]  *Id.* at ¶¶ 33, 37, 41.

[64]  Op. Br., Ex. B.

### 3. Mr. Gaudelet's claim for breach of Bastion's duty to defend is ripe and adequately pled.

The duty to defend is a separate obligation from the duty to indemnify and arises when an allegation in the underlying complaint shows a potential for liability.[65]

Again, any claim for breach of Bastion's duty to indemnify is premature. But Mr. Gaudelet also alleges a breach of Bastion's duty to defend him in the New York Action.[66] This claim is ripe because, as discussed above, the complaint in the New York Action demonstrates that Mr. Gaudelet may be found liable thereunder.

Mr. Gaudelet alleges that he has "incurred significant legal fees" because of Bastion's refusal to defend him in the New York Action as required by Agreement Section 6.2.[67] This is sufficient to plead a breach of Bastion's duty to defend.[68]

Accordingly, the Motion to Dismiss is **DENIED** as to Counterclaim I.

### D. COUNTERCLAIM II IS DUPLICATIVE OF COUNTERCLAIM I.

To survive dismissal, a declaratory count must be distinct from the affirmative

---

[65] *Laguelle v. Bell Helicopter Textron, Inc.*, 2014 WL 2699880, at *7 (Del. Super. Ct. June 11, 2014).

[66] Answer and Counterclaims ¶¶ 31, 35, 36.

[67] *Id.* at ¶ 37.

[68] *Yellow Pages Grp., LLC*, 2015 WL 358279, at *3 ("Allegations are well-pled if they place the defendant on notice of the claim.").

counts such that a decision on the affirmative counts would not resolve the declaratory count.[69]

While the parties briefed whether Counterclaim II is duplicative of Count I, the obvious deficiency is that Counterclaim II is duplicative of Counterclaim I.

Counterclaim I asserts that Bastion is in breach of its obligations to indemnify and defend Mr. Gaudelet under Agreement Section 6.2. Counterclaim II asks the Court to declare that same Section 6.2 obligates Bastion to indemnify and defend him. There is no daylight between these two claims; resolution of Counterclaim I would fully resolve Counterclaim II. Counterclaim II, therefore, is duplicative.

Thus, Bastion's Motion to Dismiss is **GRANTED** as to Counterclaim II. As this dismissal is not a matter of pleading deficiency, the Court need not grant leave to amend, as any such amendment would be futile.[70]

## VI. CONCLUSION

For the foregoing reasons:

- Bastion's Motion to Dismiss (D.I. 17) is **GRANTED** as to Counterclaim II and **DENIED** as to Counterclaim I; and

- Mr. Gaudelet's Motion to Stay (D.I. 22) is **GRANTED**. The parties

---

[69] *Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460, at *15 (Del. Super. Ct. Sept. 29, 2021).

[70] *Clark v. State Farm Mut. Auto. Ins. Co.*, 131 A.3d 806, 811 (Del. 2016) ("[L]eave to amend should be denied when the proposed amendment would be futile.").

shall file a written status report alerting the Court if any judgment is entered against Mr. Gaudelet in the New York Action.  That status report shall be filed within 21 days of the entry of such judgment and the Court will then hold a status conference with the parties on next steps to be taken in this matter.

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*

_____

Paul R. Wallace, Judge

cc: All Counsel via File and Serve