**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| AUREUS HOLDINGS, LLC d/b/a LO70s, | ) ) ) | |
| Plaintiff and Counterclaim Defendant, | ) ) | C.A. No. N20C-07-061 EMD CCLD |
| v. | ) ) ) | |
| KUBIENT, INC., | ) ) | |
| Defendant and Counterclaim Plaintiff, | ) | |

Submitted: May 24, 2021[1]
Decided: August 31, 2021

*Upon Consideration of Counterclaim Defendant's Motion to Dismiss
Amended Counterclaims*
***GRANTED in part and DENIED in part***

Larry R. Wood, Jr, Esquire, Brandon W. McCune, Esquire, Blank Rome LLP, Wilmington, Delaware. *Attorneys for Aureus Holdings, LLC d/b/a Lo70s*.

Rudolf Kock, Esquire, Travis S. Hunter, Esquire, Nicole K. Pedi, Esquire, Valerie A. Caras, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware. *Attorneys for Kubient, Inc.*

**DAVIS, J.**

## I.     INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the Court and involves claims regarding the failure to enter into an asset purchase agreement (the "APA"). Plaintiff Aureus Holdings d/b/a Lo70s ("Lo70s") alleges that Defendant Kubient Inc. ("Kubient") breached a Binding Letter of Intent ("LOI") by failing to move towards executing

---

[1] D.I. No. 36.

the APA and failing to negotiate in good faith. Lo70s also alleges that Kubient unjustly enriched themselves and tortiously interfered with Lo70s business relations.

Kubient has asserted counterclaims against Lo70s. Kubient alleges that Lo70s fraudulently induced Kubient into the LOI by falsely representing: (i) that third-parties LKQD and FreeWheel were stable customers with ongoing revenue potential; and (ii) the expertise of Lo70s' salesforce. Kubient also claims that Lo70s breached the LOI by failing to negotiate the APA's terms in good faith and failing to pay back Kubient's out-of-pocket expenses relating to negotiating the APA.

Lo70s filed its initial complaint on July 7, 2020.[2] Kubient filed its answer, affirmative defenses and counterclaims on August 31, 2020.[3] Lo70s filed the Amended Complaint on November 6, 2020 seeking recovery for (i) breach of the LOI, (ii) breach of the duty to negotiate in good faith, (iii) unjust enrichment and (iv) tortious interference with business relations.[4] On December 9, 2020, Kubient filed its Answer to the Amended Complaint, Affirmative Defenses, and Amended Counterclaims seeking recovery for (i) fraudulent inducement and (ii) breach of the LOI.[5]

On December 9, 2020, Kubient filed a partial motion to dismiss (the "Kubient Motion") Lo70s' unjust enrichment and tortious interference with business relations claims.[6] Lo70s filed the Motion on February 1, 2021 seeking to dismiss both of Kubient's counterclaims.[7]

The Court held a hearing on both motions on April 28, 2021. After the hearing, the Court took the motions under advisement. The Court denied the Kubient Motion on August 6, 2021.

---

[2] D.I. No. 1.
[3] D.I. No. 5.
[4] D.I. No. 16.
[5] D.I. No. 23.
[6] D.I. No. 22.
[7] D.I. No. 28.

For the reasons set forth below, the Court **GRANTS in part and DENIES in part** the Motion.

## II. BACKGROUND[8]

### A. PARTIES

Lo70s is a Nevada LLC headquartered in Nevada.[9] Lo70s specializes in advertising data and lead generation.[10] Lo70s offers first look access to video ad placements.[11] Lo70s participates in advertising arbitrage, or the business of buying and selling advertisement space and opportunities.[12] Lo70s depended on no single customer, platform or source of revenue in a given year.[13] Lo70s pled that it has a strong reputation and a strong network of connections that allowed Lo70s to keep up with the market.[14]

Kubient is a Delaware corporation headquartered in New York.[15] Kubient is also involved in the advertising technology industry.[16]

### B. KUBIENT BECOMES INTERESTED IN ACQUIRING LO70S.

Kubient works with digital sellers of online advertisement space to find advertisers seeking to distribute content.[17] To increase revenue, Kubient sought to acquire a company with an established and experienced salesforce with its own customer base.[18] Kubient identified

---

[8] Unless otherwise indicated, the following facts are as alleged in the Amended Counterclaim. For purposes of the Motion, the Court must view all well-pled facts alleged in the Amended Counterclaim as true and in a light most favorable to Kubient. *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).
[9] Amend. Countercls. ¶ 11.
[10] Amend. Compl. ¶ 4.
[11] *Id.* ¶ 13.
[12] *Id.* ¶ 15.
[13] *Id.* ¶ 18.
[14] *Id.*
[15] Amend. Countercls. ¶ 10.
[16] *Id.*
[17] *Id.* ¶ 14.
[18] *Id.* ¶ 15.

3

Lo70s as a potential acquisition.[19]  Kubient and Lo70s began discussing a potential acquisition in late 2018.[20]

## C.  Lo70s' SALESFORCE REPRESENTATIONS

According to Kubient, Lo70s represented that its team was comprised of expert salespeople with years of market experience.[21]  Lo70s represented that its sales team could assist with maximizing revenue from Kubient's existing customers due to Lo70s' unique market sophistication.[22]  Lo70s provided Kubient with an acquisition model highlighting Lo70s' personnel as occupying lead sales roles if Kubient were to acquire Lo70s.[23]  Lo70s explained that its team consisted of expert media planners, and buyers and sellers.[24]

Kubient alleges that the most experienced individual had approximately five years of sales experience.[25]  Another salesperson was a recent college graduate with no significant sales experience.[26]  Some of Lo70s' salespeople had poor industry reputations.[27]

## D.  Lo70s REPRESENTS A STRONG RELATIONSHIP WITH LKQD AND FREEWHEEL.

On January 3, 2019, Lo70s represented that Lo70s' business was primarily driven by three customers: (1) LKQD; (2) SpringServe; and (3) FreeWheel.[28]  Lo70s claimed that LKQD and FreeWheel comprised 90% of Lo70s' total revenue.[29]  Lo70s purportedly knew that Kubient

---

[19] *Id.* ¶ 16.
[20] *Id.*
[21] *Id.* ¶ 18.
[22] *Id.*
[23] *Id.* ¶ 19.
[24] *Id.*
[25] *Id.* ¶ 21.
[26] *Id.*
[27] *Id.* ¶ 22.
[28] *Id.* ¶ 23.
[29] *Id.*

was interested in LKQD and FreeWheel.[30]  On January 25, 2019, Lo70s sent projections showing that Lo70s expected over $6 million in gross revenue in 2019.[31]

In February 2019, Lo70s' monthly revenue from FreeWheel dropped to $818.20.[32] Lo70s only generated $164.34 from LKQD in March 2019.[33]  Lo70s never revealed that its salesforce mismanaged customer relationships.[34]  Throughout the LOI negotiations, Lo70s represented that FreeWheel and LKQD would continue as large volume customers.[35]

Based on Lo70s' revenue projections and salesforce representations, Kubient agreed to move forward with a more formalized process for finalizing a potential acquisition for Lo70s.[36]

### E.  THE LOI AND RELEVANT TERMS.

On March 1, 2019, Kubient and Lo70s entered into the LOI.[37]  Kubient and Lo70s also agreed to create the APA under which Kubient would acquire substantially all of Lo70s' assets.[38] The LOI referred to the acquisition as the "Transaction."[39]

In the LOI, the parties agreed to prepare the APA:

Proposed Agreement.  As soon as reasonably practicable after the execution of this Letter, the Parties shall commence to draft the Agreement (and related ancillary documents thereto) relating to Buyer's acquisition of all of the Assets, to be drafted by Buyer's counsel.  The Agreement would include the terms summarized in this Letter and such other representations, warranties, conditions, covenants, indemnities and other terms that are customary for transactions of this kind and are not inconsistent with this letter.[40]

---

[30] *Id.*
[31] *Id.* ¶ 27.
[32] *Id.* ¶ 31.
[33] *Id.*
[34] *Id.* ¶ 33.
[35] *Id.* ¶ 32.
[36] *Id.* ¶ 34.
[37] *Id.* ¶ 35.
[38] Amend. Compl. Ex. A (hereinafter the "LOI") at 1.
[39] *Id.*
[40] *Id.* § 1(b).

The LOI's term, referred to as the "Exclusivity Period," ran from March 1, 2019 to December 31, 2019."[41]

> The LOI contained a due diligence clause:

> Due Diligence. From and after the date of this Letter, Seller will allow Buyer and its advisors full access to Seller's facilities, records, key employees, customers, suppliers and advisors for the purpose of completing Buyer's due diligence review. The due diligence investigation will include, but is not limited to, a complete review of Seller's financial, legal, tax, environmental, intellectual property and labor records and agreements, and any other matters as Buyer's accountants, tax and legal counsel, and other advisors deem relevant.[42]

> The LOI also contained a termination clause. This termination clause provided as

follows:

> Termination. This letter will automatically terminate and be of no further force and effect upon the earlier of (i) mutual written agreement of Buyer and Seller, and (ii) 6:00pm EST on December 31, 2019. Notwithstanding anything in the previous sentence, Sections 7, 8, 9, and 11, as well as Seller's obligations under Section 5(b) shall survive the termination of this Letter and the termination of this Letter shall not affect any rights any Party has with respect to the breach of this Letter by another Party prior to such termination.[43]

> Under the LOI, Lo70s was to pay Kubient's out-of-pocket expenses if the parties did not

consummate the Transaction:

> If within the Exclusivity Period, Seller does not execute definitive documentation for the Transaction reflecting the material terms and conditions for the Transaction set forth in this Letter or material terms and conditions substantially similar thereto (other than as a result of either the mutual agreement by Buyer and Seller to terminate this Lettter oro to change such material terms and conditions in any material respects or the unilateral refusal of Buyer to execute such definitive documentation), then Seller shall pay to Buyer an amount equal to the reasonable out-of-pocket expenses (including the reasonable fees and expenses of legal counsel, accountants and other advisors and whether incurred prior to or after the date hereof) incurred by Buyer in connection with the proposed Transaction, which amount shall be payable in same day funds on the day that is the first business day after the Exclusivity Period.[44]

---

[41] *See id.* § 5(a).
[42] *Id.* § 2.
[43] *Id.* § 6.
[44] *Id.* § 5(b).

## F. THE PARTIES ACT UNDER THE LOI.

On April 30, 2019, Kubient made a $200,000 deposit to Lo70s to move the Transaction forward.[45]  Around the same time, Kubient began performing due diligence on Lo70s' business operations.[46]  Kubient's due diligence revealed that many of Lo70s most significant customers were unhappy with Lo70s' performance and were already in the process of shifting their business operations away from Lo70s.[47]

On May 16, 2019, FreeWheel revealed that its opinion of Lo70s was so poor that Lo70s could not use its name on the FreeWheel platform.[48]  Kubient also discovered that certain Lo70s' salespeople had such poor industry reputations that they could not be invited to customer meetings.[49]

Kubient requested and paid for an audit report.[50]  On September 25, 2019, Kubient received the audit report of Lo70s.[51]  The audit revealed that Lo70s had lost virtually all revenues associated with LKQD and FreeWheel.[52]  Lo70s only provided financial information showing steady month-over-month revenue.[53]  Kubient inferred that the customers generating revenue prior to the LOI were the same customers generating it after the LOI.[54]

---

[45] Amend. Countercls. ¶ 41.
[46] *Id.* ¶ 42.
[47] *Id.*
[48] *Id.* ¶ 43.
[49] *Id.*
[50] *Id.* ¶ 46
[51] *Id.*
[52] *Id.* ¶ 47.
[53] *Id.*
[54] *Id.*

7

## G. KUBIENT AND LO70S CONTINUE TO NEGOTIATE.

Kubient continued to work with Lo70s.[55]  For example, Kubient provided a list of contracted customers to Lo70s so that Lo70s could attempt to align them as a buyer on Lo70s' inventory.[56]

On October 9, 2019, Lo70s sent a proposed deal structure.[57]  The terms included a structured earn out based on Lo70s' projections showing Q4 2019 revenue exceeding $1 million.[58]  Lo70s projections, however, included substantial revenues of existing Kubient clients.[59]  Kubient's Board of Directors rejected the deal.[60]  Lo70s threatened to file a lawsuit two days before Kubient's IPO to "blow it up."[61]

Kubient responded on November 20, 2019, offering two paths forward: (1) continue to negotiate recognizing that the parties would likely not agree on a purchase price; or (2) terminate the LOI.[62]  On December 6, 2019, Lo70s demanded that Kubient complete the Transaction for $500,000.[63]  Kubient rejected the offer the same day.[64]  On December 31, 2019, Lo70s, through counsel, sent a letter threatening legal action against Kubient.[65]

Kubient never drafted or finalized the APA and ancillary documents.[66]  Kubient did not present an execution copy of the APA and the ancillary documents before the Exclusivity Period expired on December 31, 2019.[67]

---

[55] *Id.* ¶ 51.
[56] *Id.*
[57] *Id.* ¶ 53.
[58] *Id.*
[59] *Id.*
[60] *Id.* ¶ 54.
[61] *Id.* ¶ 55.
[62] *Id.* ¶ 56.
[63] *Id.* ¶ 57.
[64] *Id.*
[65] *Id.* ¶ 58.
[66] Am. Compl. ¶ 49.
[67] *Id.* ¶ 50.

8

### III.    PARTIES' CONTENTIONS

#### A.  KUBIENT'S BREACH OF CONTRACT COUNTERCLAIM

Lo70s moves to dismiss Kubient's breach of contract counterclaim.  First, Lo70s argues that Lo70s did not breach the LOI because disagreeing about the value of Lo70s' assets is not a breach of any contract.  Second, Lo70s contends that it did not breach any obligation under the LOI by failing to disclose that LKQD and FreeWheel intended to reduce their volume of business when Lo70s provided full access to Lo70s' financial and customer data.  Third, Lo70s states that Kubient never delivered definitive APA documentation and therefore, the LOI never obligated Lo70s to reimburse Kubient for out-of-pocket costs under Section 5(b) of the LOI.

Kubient opposes dismissal.  Kubient argues that it only must plead that Lo70s failed to negotiate the final terms of the APA in good faith to avoid dismissal.  Kubient then highlights that the counterclaim pleads facts showing that Lo70s negotiated in bad faith.  Kubient also contends that the only condition in Section 5(b) is that if Lo70s fails to deliver definitive APA documents then Lo70s is obligated to reimburse Kubient for transaction costs.

#### B.  KUBIENT'S FRAUDULENT INDUCEMENT CLAIM

Lo70s claims that Kubient fails to allege an actionable fraudulent inducement claim. Lo70s argues that: (i) its statements about its workforce were mere puffery and expressions of opinion; (ii) that its revenue projections are mere predictions about Lo70s' future performance; and (iii) that its statements about its relationships were not fraudulent because Kubient does not allege that Lo70s knew those statements were false.  Lo70s also contends that Kubient's fraudulent inducement claim is a bootstrapped breach of contract claim.

Kubient asserts that Lo70s projections are actionable fraud because they are based on representations about LKQD and FreeWheel that Lo70s knew were false or were at least

materially misleading. Kubient also argues that Lo70s' statements about its workforce were not mere puffery because Lo70s inflated the credentials of specific salespeople. Finally, Kubient maintains that the fraudulent inducement claim is not a bootstrapped breach of contract claim because Kubient alleges fraudulent pre-contract representations and seeks rescissory damages.

## IV.     STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[68] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[69]

In considering a motion to dismiss under Rule 12(b)(6), the court generally may not consider matters outside the complaint.[70] However, documents that are integral to or incorporated by reference in the complaint may be considered.[71] "If . . . matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."[72]

Under Superior Court Civil Rule 9(b), a party must plead fraud and negligence with particularity.[73] The purpose of [Rule 9(b)] is to apprise the adversary of the acts or omissions by

---

[68] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, No. 09C-09-136, 2010 WL 5825353, at *3 (Del. Super. Oct. 27, 2010).
[69] *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998).
[70] Super. Ct. Civ. R. 12(b).
[71] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995).
[72] Super. Ct. Civ. R. 12(b).
[73] Super. Ct. Civ. R. 9(b).

10

which it is alleged that a duty has been violated.[74] To plead fraud or negligence with the particularity required by Rule 9(b), a party must include the "time, place, contents of the alleged fraud or negligence, as well as the individual accused of committing the fraud" or negligence.[75]

## V.    DISCUSSION

### A.  KUBIENT PLED A VIABLE BREACH OF CONTRACT COUNTERCLAIM.

A complaint for a breach of contract is sufficiently pled "if it contains 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[76]  Such a statement must only give the defendant fair notice of a claim and is to be liberally construed.[77]  Under Delaware law, "a plaintiff need not plead evidence; the plaintiff need only allege facts that, if true, state a claim upon which relief can be granted."[78]  The notice pleading standard, however, "does not totally relieve a plaintiff of the burden to plead facts, not conclusions."[79]  The plaintiff, however, "is not required . . . to narrate facts sufficient to constitute a cause of action."[80]  Cause of action statements that do not allege every element are acceptable "if the missing elements, or element, follow, or may reasonably inferred from the facts that are alleged."[81]  "Allegations regarding damages can be pled generally."[82]

To survive dismissal, Kubient must allege facts that show, or from which it may be inferred, that the LOI contained representations and warranties, these representations or

---

[74] *Mancino v. Webb*, 274 A.2d 711, 713 (Del. Super. 1971).

[75] *See TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, C.A. No. N14C-12-112 WCC CCLD, 2015 WL 5968726, at *6 (Del. Super. Sept. 25, 2015) (quoting *Universal Capital Mgmt., Inc. v. Micco World, Inc,* C.A. No. N10C-07-039-RRC, 2012 WL 1313598, at *2 (Del. Super. Feb. 1, 2012).

[76] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003).

[77] *Id.*

[78] *Id.*

[79] *Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 893 (Del. Ch. 1999).

[80] *Costello v. Cording*, 91 A.2d 182, 184 (Del. Super. 1952).

[81] *Id.*

[82] *In re Ezcorp Inc. Consulting Agreement Derivative Litigation*, 2016 WL 301245, at *30 (Del. Ch. Jan. 25, 2016).

warranties were breached, and the breach resulted in damages.[83]  Kubient alleges that the LOI is

a binding agreement between Kubient and Lo70s.[84]  Kubient also alleges damages generally

from that breach.[85]  Lo70s argues that Kubient does not identify a material breach.

### i.  *Kubient alleges that Lo70s breached the LOI by failing to negotiate in good faith because Lo70s wrongfully threatened litigation to force Kubient to pay Lo70s' requested price.*

Kubient alleges that Lo70s breached the LOI by failing to negotiate the terms of the APA

in good faith.[86]  The LOI provides that the parties would negotiate "negotiate in good faith."[87]

An express contract to negotiate in good faith is binding on contracting parties.[88]  "Under

Delaware law, 'bad faith is not simply bad judgment or negligence, but rather it implies the

conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates

a state of mind affirmatively operating with furtive design or ill will.'"[89]  "Determining whether

a party acts in bad faith generally is fact-specific and requires a contextual inquiry into what the

parties knew and understood."[90]

Kubient contends that Lo70s threatened to "blow . . . up" Kubient's IPO by filing a

lawsuit if Kubient did not pay Lo70s' requested price.[91]  Threatening litigation is wrongful if the

threat is without merit, or intended only to harass the parties and not to bring the claim to

definitive adjudication.[92]  Therefore, Kubient pleads lack of good faith when Kubient alleges that

---

[83] *See Horton v. Organogenesis Inc.*, 2019 WL 3284737, at *3 n.32 (Del. Ch. Jul. 22, 2019) ("The amended counter claim . . . does plead the requisite elements of a predicate breach of contract claim – a contractual obligation, breach, and damages. *See* Am. Countercl. ¶¶ 11-15 (alleging the existence of representations and warranties), 22-26 (alleging breaches of representations and warranties and resulting damages), 30 (generally alleging damages)").
[84] Amend. Countercls. ¶ 71.
[85] *Id.* ¶ 75.
[86] *Id.* ¶ 73.
[87] LOI at 1.
[88] *See SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 344 (Del. 2013).
[89] *Id.* (citing *CNL-AB LLC v. E. Prop. Fund I SPE (MS REF) LLC*, 2011 WL 353529, at *9 (Del. Ch. Jan. 28, 2011)).
[90] *CNL-AB LLC*, 2011 WL 353529, at *9 (Del. Ch. Jan. 28, 2011).
[91] Amend. Countercls. ¶ 55.
[92] *See Soterion Corp. v. Soteria Mezzanine Corp.*, 2012 WL 5378251, at *14 (Del. Ch. Oct. 31, 2012).

Lo70s did not negotiate in good faith by threatening litigation and breached the LOI's good faith negotiation provision.

### ii. Lo70s' failure to mention that LKQD and FreeWheel scaled down their relationships with Lo70s does not constitute acting in bad faith.

"A party does not act in bad faith by relying on contract provisions for which that party bargained where doing so simply limits advantages to another party."[93] The parties agreed to permit Kubient full access to Lo70s' facilities, records, key employees, customers, suppliers and advisors for Kubient's due diligence.[94] Kubient does not allege that Lo70s prevented Kubient from performing its due diligence in any way. Therefore, Lo70s did not act wrongfully by relying upon the due diligence clause to let Kubient discover that Lo70s' LKQD and FreeWheel relationships change instead of affirmatively informing Kubient.

### iii. Kubient sufficiently pleads a claim that Lo70s breached Section 5(b).

Lo70s argues that Kubient's obligation under Section 1(b) to draft the APA is a condition to its obligation to execute definitive documentation for the Transaction. Generally, when there is a condition precedent, there is no duty to perform until the condition occurs.[95] Delaware recognizes the prevention doctrine, where the duty to perform is excused if the other party wrongfully prevents the condition from occurring.[96] "Courts interpret language such as 'if,' 'as soon as,' or 'provided that' as the express creation of a condition."[97] Delaware courts may imply a condition precedent if one party is unable to perform without the other party performing an action.[98]

---

[93] *Nemec v. Shrader*, 991 A.2d 1120
[94] LOI § 2.
[95] *See Bobcat N. Am., LLC v. Inland Waste Hldgs., LLC*, 2019 WL 1877400, at *6 (Del. Super. Apr. 26, 2019).
[96] *Id.*
[97] *Munro v. Beazer Home Corp.*, 2011 WL 2651910, at *5 (Del. Com. Pl. Jun. 23, 2011).
[98] *Marcom Grp., Ltd. v. Redgo Props., Inc.*, 1998 WL 278368, at *4 (Del. Super. Apr. 15, 1998) (declining to enter summary judgment when defendant did not provide utilities under a contract when Defendant claimed that it failed to perform because Plaintiff failed to provide necessary plans and the evidence was unclear about who was at fault).

Section 5(b) provides:

> If within the Exclusivity Period, [Lo70s] does not execute definitive documentation for the Transaction reflecting the material terms and conditions for the Transaction set forth in this Letter or material terms and conditions substantially similar thereto (other than as a result of either the mutual agreement by Buyer and Seller to terminate this Letter or to change such material terms and conditions in any material respects or the unilateral refusal of Buyer to execute such definitive documentation), then Seller shall pay to Buyer an amount equal to the reasonable out-of-pocket expenses (including the reasonable fees and expenses of legal counsel, accountants and other advisors and whether incurred prior to or after the date hereof) incurred by Buyer in connection with the proposed Transaction, which amount shall be payable in same day funds on the day that is the first business day after the Exclusivity Period."[99]

There is no language in Section 5(b) creating an express condition to Lo70s' obligation to execute definitive documentation for the Transaction. Therefore, unless Section 1(b) creates an implied condition, Lo70s breached the contract by not delivering a definitive Transaction document.[100]

Section 1(b) relates to the drafting of the APA:

> As soon as reasonably practicable after the execution of [the LOI], the Parties shall commence to draft the Agreement (and related ancillary documents thereto) relating to [Kubient's] acquisition of all of the Assets, to be drafted by [Kubient's] counsel. The Agreement would include the terms summarized in this Letter. . . .[101]

Even if the Court interpreted Section 1(b) as creating a condition to Lo70s' obligation under Section 5(b), the Court must draw reasonable inferences in favor of Kubient at this stage of the proceedings. Kubient alleges that Lo70s negotiated the APA in bad faith, wrongfully preventing Kubient from agreeing to terms with Lo70s.[102] Therefore, under the prevention

---

[99] LOI § 5(b).
[100] Amend. Compl. ¶ 74.
[101] LOI § 1(b).
[102] *See e.g.* Amend. Compl. ¶ 55.

doctrine, Lo70s could not rely upon Kubient's failure to draft the APA to excuse Lo70s' failure to deliver definitive documents.

### B. KUBIENT FAILS TO PLEAD A VIABLE FRAUDULENT INDUCEMENT COUNTERCLAIM.

To state a claim for fraudulent inducement, Kubient "must plead facts supporting an inference that: (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance."[103]

Under Civil Rule 9(b), a plaintiff must plead fraud and negligence with particularity.[104] The plaintiff must include the "time, place, contents of the alleged fraud or negligence, as well as the individual accused of committing the fraud" or negligence.[105] "Malice, intent, knowledge and other condition of mind of a person may be averred generally."[106] "At the motion to dismiss stage, a plaintiff 'need only point to factual allegations making it reasonably conceivable that the defendants charged with fraud knew the statement was false.'"[107] Essentially, the plaintiff must allege fraud "with detail sufficient to apprise the defendant of the basis for the claim."[108]

Kubient argues that Lo70s acted fraudulently with respect to (1) Lo70s' relationship with LKQD and FreeWheel and (2) Lo70s' unique revenue generation skills.[109]

---

[103] *Abry Partners V., L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).
[104] DEL. SUPER. CT. R. 9(B).
[105] *See TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *6 (Del. Super. Sept. 25, 2015) (quoting *Universal Capital Mgmt., Inc. v. Micco World, Inc,* 2012 WL 1413598, at *2 (Del. Super. Feb. 1, 2012)).
[106] DEL. SUPER. CT. R. 9(B).
[107] *In re Bracket Holding Corp. Litigation*, 2017 WL 3283169, at *10 (Del. Super. Jul. 31, 2017) (citing *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 61 (Del. Ch. 2015).
[108] *Abry Partners V., L.P.*, 891 A.2d at 1050 (Del. Ch. 2006).
[109] Answer. Br. 16.

### i. *Lo70s' revenue projections are not actionable.*

First, Kubient alleges that Lo70s falsely represented or omitted facts that it had a duty to disclose. Under Delaware law, "fraud can occur . . . in one of three ways: (1) an overt misrepresentation; (2) silence in the face of a duty to speak; or (3) active concealment of material facts."[110] "If a party in an arms' length negotiation chooses to speak, then it cannot lie."[111] A party also cannot speak "partially or obliquely such that what the party conveys becomes misleading."[112] Generally, statements as to probable future results are not fraudulent.[113] "Forward-looking statements of opinion are actionable as fraudulent only if they were known to be false when made or were made with a lack of good faith."[114] A plaintiff, however, "may not simply contrast a defendant's past optimism with less favorable actual results and then contend that the difference must be attributable to fraud."[115]

Here, Lo70s represented revenue projections of $6 million. Mere revenue predictions, unaccompanied by other fraudulent conduct "cannot give rise to actionable common law fraud."[116] Kubient's assumption that the revenue projection included a significant relationship with LKQD and FreeWheel does not amount to fraudulent conduct by Lo70s. Therefore, Lo70s' revenue projection is not actionable. Lo70s alleged representations about LKQD and FreeWheel would continue to be large customers is, similarly, nonactionable optimism contrasted with less favorable results.

---

[110] *In re Am. Intern. Grp., Inc.*, 965 A.2d 763, 804 (Del. Ch. 2009).
[111] *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 52 (Del. Ch. 2015).
[112] *Id.*
[113] *Esso Std. Oil Co. v. Cunningham*, 114 A.2d 380, 383 (Del. Ch. 1955).
[114] *Mooney v. E.I. du Pont de Nemours and Co.*, 2017 WL 5713308, at *6 (Del. Super. Nov. 28, 2017)
[115] *Noerr v. Greenwood*, 1997 WL 419633, at *4 (Del. Ch. Jul. 16, 1997) (internal citations omitted).
[116] *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001) (holding that statements that sales reductions were temporary and full-year sales projections would be met were non-actionable predictions of the future).

Moreover, Kubient would be able to exercise broad due diligence rights before entering into the APA. The LOI's due diligence clause provides:

> Due Diligence. From and after the date of this Letter, Seller will allow Buyer and its advisors full access to Seller's facilities, records, key employees, customers, suppliers and advisors for the purpose of completing Buyer's due diligence review. The due diligence investigation will include, but is not limited to, a complete review of Seller's financial, legal, tax, environmental, intellectual property and labor records and agreements, and any other matters as Buyer's accountants, tax and legal counsel, and other advisors deem relevant.[117]

As such, Kubient had the right to Lo70s financials, access to the salesforce, customers and, accordingly, the ability to test the projections, quality of salesforce, etc. Kubient, therefore, has a right to full additional due diligence and is not relying on any previous representations from Lo70s.

### ii. Lo70s' statements about its workforce are not actionable.

Lo70s argues that its statements about its workforce are non-actionable puffery. "[A] company's optimistic statements praising its own 'skills, experience, and resources' are 'mere puffery and cannot form the basis for a fraud claim.'"[118] Kubient alleges that Lo70s made false representations that they had an experienced salesforce and had a team of expert media planners, buyers and sellers.[119] Lo70s also represented that their sales team could maximize revenue from Kubient's existing customers "due to Lo70s' unique market sophistication."[120] These are the kind of "vague statements that a commercial party routinely makes during a deal-making courtship."[121] Therefore, Lo70s' statements about its workforce are not actionable.

---

[117] *Id.* § 2.
[118] *Airborne Health, Inc. v. Squid Soap, LP*, 2010 WL 2836391, at *8 (Del. Ch. Jul. 20, 2010) (citing cases where courts found representations of expertise and unique resources to be mere non-actionable puffery).
[119] Amend. Countercls. ¶¶ 18-19.
[120] *Id.* ¶ 18.
[121] *Airborne Health, Inc.*, 2010 WL 2836391, at *8 (Del. Ch. Jul. 20, 2010).

Again, Kubient negotiated the right to extensive due diligence as to key employees and customers. Kubient maintained the right to test any statements made by Lo70s as to Lo70s workforce and was not relying to its detriment on Lo70s's representations.

As neither Lo70s' revenue projections nor its workforce statements are actionable, the Court is dismissing Kubient's fraudulent inducement counterclaim.

## VI. CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion as to the breach of contract counterclaim and **GRANTS** the motion as to the fraudulent inducement counterclaim.

Dated: August 31, 2021
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress