# IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

JOAN C. WEBER DEMPSEY  )
    Defendant below, Appellant.  )
                                      )
                                      )
                                      )
             v.  )     C.A. No. CPU6-20-000815
                                        )
PINTAIL POINTE OWNERS  )
ASSOCIATION, INC.,  )
                                      )
    Plaintiff Below, Appellees.  )

Submitted July 18, 2022
Decided October 24, 2022

Joan C. Weber Dempsey
29152 Finch Lane
Milton, DE 19968
*Pro Se, Appellant*

Robert Valihura, Jr., Esquire
Morton, Valihura & Zerbato, LLC
3704 Kennett Pike, Suite 200
Greenville, DE 19807
*Attorney for Appellees*

## DECISION ON APPEAL

**MIMS, J.**

# PROCEDURAL HISTORY

This case is before the Court on appeal from a decision of the Justice of the Peace pursuant to 10 *Del. C.* § 9571.

On May 9, 2020, Appellee filed a debt action in the Justice of the Peace Court against Appellant.[1] On June 4, 2020, Appellant filed an answer as well as a request for a Bill of Particulars. On June 25, 2020, the Justice of the Peace Court scheduled a pre-trial conference for July 14, 2020. On July 14, 2020, the Justice of the Peace Court held the conference and scheduled the matter for trial on August 17, 2020. The parties appeared to be in settlement negotiations. On August 19, 2020, the Justice of the Peace Court scheduled the matter for trial on September 8, 2020. On September 9, 2020, the Justice of the Peace Court issued an Interim Order finding that prior to trial Appellee's legal counsel agreed to accept $727.50 from Appellant as payment for her Homeowner's Association dues and fees through September 30, 2020. In addition, Appellee's legal counsel agreed to submit an Affidavit of Attorney's Fees to Appellant by close of business. Finally, the award of attorney's fees would be made by October 24, 2020.

On September 24, 2020, the Justice of the Peace Court found in favor of Appellee. Appellant had paid her Homeowner's Association dues, however, that left attorney's fees for Appellee's counsel. The Justice of the Peace Court held that Appellee showed they were entitled to recovery of attorney's fees. The Justice of the Peace Court held that Appellee had paid the fees to legal counsel and therefore Appellant would be held liable, and the fees were reasonable.

On October 5, 2020, Appellant filed an appeal *de novo* to this honorable Court. On November 3, 2020, Appellee filed a Complaint and on November 12, 2020, Appellant filed an Answer. On April 29, 2021, Appellant filed a Motion to Stay Execution of the Justice of the Peace

---

[1] Del. J.P. Order, C.A. No. JP17-20-002556 (Sept. 24, 2020).

Court order and Appellee filed a response on May 3, 2021. On June 15, 2021, Appellant filed a Motion to Disqualify Robert Valihura, Jr., counsel for Appellee, and Appellee filed a response on June 29, 2021. On September 17, 2021, the Court scheduled both motions for October 5, 2021. On October 5, 2021, the Court continued the matters as the Commissioner had a conflict. On January 21, 2022, Appellant filed a request for the motions not to be heard on certain dates as she would be out of town. On March 30, 2022, the Court schedule a Motions hearing for May 25, 2022. Appellee asked for a continuance and the Motions hearing was scheduled for June 1, 2022.

The Court heard the Motion to Stay Execution of the Justice of the Peace Court Order and Motion to Disqualify Robert J. Valihura, Jr., Esq. In a ruling from the bench, the Court denied Appellant's Motion to Disqualify and denied Appellant's Motion to Stay Execution unless Appellant provided a supersedeas bond by surety or cash within 10 days. On June 8, 2022, Appellant filed bond in the amount of $2,748. At the end of the hearing, the Court scheduled the trial for July 18, 2022. On July 18, 2022, this Court held a trial *de novo* and reserved its decision. This is the Court's final decision after trial.

**FACTUAL BACKGROUND**

After hearing testimony at trial, the Court finds the relevant facts to be as follows:

This Court heard testimony from five witnesses and received documentary evidence from Appellant[2] and Appellee[3]. The witnesses included Sherry Lyons, Hayes Glanden, Donald Gentry, Nicholas DeMalto and Joan Dempsey.

Appellant resides at 29152 Finch Lane, Milton, DE 19968 located within Pintail Point community that is overseen by Pintail Pointe Owners Association, Inc., (Appellee) a Delaware corporation comprised of homeowners, charged with maintaining the common elements for the

---

[2] Exhibits Number one through four.
[3] Exhibits Number one through seven.

Pintail Point community – encompassing 39 single family home sites.[4] Appellant added her parents to her deed but maintains a 99% interest in the property with right of survivorship.[5] The deed states the property is subject to any and all restrictions, reservations, conditions, easements and agreements.[6] Under Appellee's "Declaration of Covenants, Conditions and Restrictions," subsection 15 H states, "If any Assessment is not paid on the date when stated to be due in the notice of assessment, then the Assessment shall be deemed delinquent, and if the delinquent payment is a periodic payment (i.e. monthly, quarterly, etc.), the entire assessment shall be delinquent, and shall, together with such interest thereon and cost of collection thereof, including reasonable attorney's fees, as hereinafter provided, continue as a lien on the Lot and any structure built thereon which shall bind such Lot in the hands of the Owner, his heirs, devisees, personal representatives, successors and assigns."[7]

Hayes Glanden (Glanden) served as the former president of Appellee. He, along with Appellant were members of the 5-person governing body of Appellee. As part of its governing duties, Appellee designated a management company to collect the assessment fees for the community of Pintail Point. Glanden testified on or about 2016 Appellee hired Seascape as the management company and assessments were due twice a year. Appellee hired Signature Property Management, Inc. on or about 2018 and assessments were quarterly. Currently, Tidewater Property Management serves as Appellee's management company and assessments are quarterly. Glanden testified he knew Appellant arranged to pay her assessments yearly with Seascape and Signature. Appellant admitted that is the arrangement she had made with those management companies and

---

[4] Appellee Exhibit Number 3.
[5] Appellee Exhibit Number 2.
[6] *Id.*
[7] Appellee Exhibit Number 4.

4

typically paid $1485. Appellant failed to pay her assessments at a set time.[8] Appellant paid May 12, 2015 for that year, paid October 8, 2016 for that year, paid August 27, 2017 for that year, and December 12, 2018 for that year.[9]

Appellant admitted she failed to pay her assessment in 2019 nor did she know that there was an increase in fees. Signature Management Company mailed a statement of account to Appellant for the period of January 1, 2019 through April 20, 2020 stating Appellant owed $2,809.39.[10] The statement stated that payments were due April 1, 2020 and would be considered late by April 30, 2020.[11] On April 21, 2020, Bobby Spencer, the Assistant Property Manager at Signature Property Management, emailed Robert Valihura, legal counsel for Appellee, stating that "[W]e would like to proceed with collections for the attached homeowner at Pintail Pointe. Please let me know if you need any other documents from our office."[12] Glanden, as president of Appellee, approved Signature sending the letter of collection to Appellant.[13] Glanden testified he did not realize the collection letter meant legal action. However, he approved payment for invoices sent by Appellee's legal counsel, Morton, Valihura and Zerbato starting April 23, 2020.[14]

On May 19, 2020, Appellee files a debt action in the Delaware Justice of the Peace Court for the $2,809.39, $43.75 for court costs and attorney's fees pursuant to the Declaration for the Pintail Pointe community.[15] Appellee served Appellant through certified mail on May 22, 2020.[16] On May 27, 2020. Appellant submitted a check to Signature Property Management for $1485 for

---

[8] Appellant Exhibit Number 4.
[9] *Id.*
[10] Appellee's Exhibit Number 6.
[11] *Id.*
[12] Appellee Exhibit Number 1.
[13] Appellant Exhibit Number 1.
[14] Appellee's Exhibit Number 5.
[15] Appellee's Exhibit Number 3.
[16] Appellee's Exhibit Number 7.

assessments for 2019.[17] In addition, Appellant submitted a check on this same date to Signature Property Management for $1005 for the 2020 yearly fees of $525 and the sewer fee of $480.[18] Appellant never contacted Appellee prior to the debt action being filed. Nor did Appellant contact legal counsel for Appellee after the legal action was filed. Appellant submitted a check to Signature Property Management on September 4, 2020 for $727.50.[19] Signature Property Management mailed a statement of account to Appellant for the period of January 1, 2020 through October 8, 2020 stating Appellant still owed $500.89 after Appellant's three payments that would be due October 1, 2020 and would be considered late by October 31, 2020.[20] On November 10, 2020, Appellant submitted a check to Signature Property Management for $454 for the assessments for the remainder of 2020.[21] Signature Property Management mailed a statement of account to Appellant for the period of October 22, 2020 through November 30, 2020 stating Appellant, after her payment of $454, owed $2,388.09 due by October 1, 2020 and would be considered late by October 31, 2020.[22]

Glanden testified Appellant reached out to him after the Justice of the Peace Court awarded in Appellee's favor for help with the new property management group, On December 20, 2020, as he was ending his tenure as president of Appellee, he sent a letter to Don Gentry at Tidewater Property Management about Appellant's case stating he never authorized Signature Property Management to hire an attorney to file suit against Appellant.[23] Glanden further stated that if this continues Appellant may be forced to obtain an attorney and Appellee may have to pay fees which

---

[17] Appellant's Exhibit Number 4.
[18] *Id.*
[19] Appellant's Exhibit Number 4.
[20] Appellee's Exhibit Number 6.
[21] Appellant's Exhibit Number 4.
[22] Appellee's Exhibit Number 6.
[23] Appellant's Exhibit Number 2.

they cannot afford.[24] Glanden admitted he approved the payment of fees to legal counsel. Glanden believed the Affidavit of Attorney's fees was sent to and approved by him. Glanden admitted he did not look at the invoices or the Affidavit, however he knew that attorney's fees had been requested as part of the judgment against Appellant. Glanden testified that he understood the community of Pintail Pointe would have to pay the attorney's fees if Appellant did not pay them. Glanden admitted he did not understand the consequences of trying to make this go away.

On or about December 2020/January 2021, Nicholas DeMalto (DeMalto) assumes the presidency of Appellee. DeMalto testified he took over as the community was going through a major sewer issue where the Delaware Department of Natural Resources and Environmental Control (DNREC) were possibly condemning the community within 30 days and everyone would lose their homes. DeMalto testified the sewer issue was very expensive for the community and they had to assess additional payments from the members of the community on a quarterly basis. Appellant approached DeMalto about the matter stating the amount Tidewater Property Management states she owes is incorrect and she is not allowed to pay online.[25] On March 3, 2021, DeMalto sent an email to RuthAnn Barnes at Tidewater Property Management stating Appellee is not authorizing collections and attorneys to pursue this matter any further.[26] DeMalto testified he wrote the email prior to learning that Appellee would have to pay the attorney's fees if Appellant failed to do so. DeMalto testified he received additional details from legal counsel about the nature of the proceedings, specifically ongoing legal proceedings as Appellant appealed the judgment from the Justice of the Peace Court. DeMalto authorized, after taking the matter to the full Board of Appellee, legal counsel for Appellee to continue to litigate and pursue this matter on the

---

[24] *Id.*
[25] Appellant's Exhibit Number 3.
[26] *Id.*

appellate level as not doing so would end in a default judgment against Appellee. DeMalto testified that he tried to make this whole matter disappear but ultimately the homeowners in the community could not afford to pay this debt.

On September 30, 2021, Appellant submitted a check to Tidewater Property Management for $1,818 for assessments through December 2021.[27] On May 27, 2022, Appellant submitted a check to Tidewater Property Management for $761 for assessments through June 1, 2022.[28] On July 13, 2022, Tidewater Property Management sent Appellant an account for the period between November 30, 2020 and July 1, 2022.[29] The account statement informed Appellant that "[T]his account has been referred to an attorney. The balance reflected on this account is not accurate. Please contact the attorney directly for the current balance due, as legal fees may be added to your balance. Your account as been blocked, and no payments will be accepted from our office."[30]

Donald Gentry (Gentry), Regional Director of Tidewater Property Management, testified Pintail Point is one of the communities they serve. Gentry testified Tidewater Property Management contacted Signature Property Management about Appellant's account and received the records. Gentry testified he had no knowledge of Appellant contacting Tidewater Property Management about her assessments. Gentry testified that Tidewater Property Management's policy is that once a case has been turned over to the attorney, they no longer accept monies and any payments must be made to the attorney. Gentry testified he did cease pursing the matter when contacted by DeMalto.

---

[27] Appellant's Exhibit Number 4.
[28] *Id.*
[29] Appellee's Exhibits Number 6.
[30] *Id.*

Sherry Lyons (Lyons), Business Manager/Paralegal at Morton, Valihura & Zerbato, testified she conducts billing and oversees paralegal activities for legal counsel for Appellee. In particular, she works on collection matters and is familiar with the firm's processes. Lyons testified as to all the actions by legal counsel on behalf of Appellee in the Justice of the Peace Court and this honorable Court. Counsel for Appellee filed an Affidavit of Attorney's fees prepared by Lyons.[31] Under Exhibit A, the attorney's fees, costs, and expenses from April 23, 2020 through October 13, 2020 in the Justice of the Peace Court total $4,149.20.[32] Under Exhibit B, the attorney's fees, costs, and expenses incurred in this action from October 8, 2020 through June 30, 2022 in the Court of Common Pleas totals $8,798.15 plus $2,920.50.[33] The estimated attorney's fees, costs, and expenses to be incurred in this action at the trial on July 18, 2022 in the Court of Common Pleas totals $13,467.90.[34] Appellee requests this honorable Court to allow the judgment to reflect $17,617.10 in attorney's fees, costs, and expenses and make that amount part of the judgement.

## PARTIES' CONTENTIONS

Appellant contends she had personal and medical issues and forgot she had not paid her assessments in 2019. Appellant felt Appellee could have reached out to her rather than institute legal action. Appellant believes she should not have to pay attorney's fees as Appellee did not authorize legal action, as is required in their bylaws. Appellant contends she cannot pay what she does not know, and she is not allowed to pay online or by paper billing. Appellant stated she paid all her assessments in full, and that Appellee's legal counsel is driving this action for attorney's fees.

---

[31] Appellee Exhibit Number 5.
[32] *Id.*
[33] *Id.*
[34] *Id.*

Appellee contends this action is about collecting homeowner's fees that were in arrears for about 18 months. Appellee requested its legal counsel to institute the debt action. Appellee asserts Appellant has continued to litigate the matter through two separate courts thereby increasing the attorney's fees.

## STANDARD OF REVIEW

The Court is the trier of facts and has the sole discretion to determine the credibility of the witnesses and any evidence provided.[35] If there is conflicting evidence presented at trial, the Court has to reconcile these conflicts – if reasonably possible – in order to find congruity.[36] However, if the Court is unable to find such congruity, the Court must determine which portions of the testimony deserve more weight.[37] Any portion of the testimony which the Court finds unsuitable for consideration must be disregarded.[38] The Court considers "the witnesses' demeanor, or the fairness and descriptiveness of their testimony, their ability to personally witness or know the facts about which they testify, and any biases or interests they may have concerning the nature of the case."[39]

## DISCUSSION

In civil claims, the party asserting the claim bears the burden of proving each and every element of the claim by a preponderance of the evidence.[40] The side of the greater weight of the evidence is found is the side on which the preponderance of the evidence lies.[41] If the evidence is

---

[35] *Leep v. Weline*, 2018 WL 301089, *5 (Del. Com. Pl. Jan. 3, 2018).
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Sullo v. Kousournas*, 2010 WL 718666, at *6 (Del. Super. Feb. 3, 2010).
[41] *Reynolds v. Reynolds*, 237 A.2d 708, 711 (Del. 1967).

in even balance, then the party bearing the burden of proving a fact by a preponderance of the evidence has failed to satisfy the burden.[42]

To prevail on a claim for breach of contract, the plaintiff must prove, by a preponderance of the evidence, that: (1) a contract existed between the parties; (2) breach by the defendant of an obligation imposed under the contract; and (3) damages to plaintiff resulting from that breach.[43] As the finder of fact in a bench trial, the Court must weigh the credibility of witnesses and resolve the conflicts of their testimony[44].

Delaware law has defined a contract "as an agreement upon sufficient consideration to do or not to do a particular thing."[45] "Consideration is a bargained-for-exchange of legal value."[46] All contracts and modifications require consideration.[47] In order to create a contract, there must be "mutual assent to the terms of the agreement, also known as the meeting of the minds."[48] "Mutual assent requires an offer and acceptance where in 'all the essential terms of the proposal must have been reasonably certain and definite.'"[49] If the meeting of the minds does not occur, then the contact is unenforceable under Delaware law.[50]

There is no dispute Appellant is subject to the Pintail Pointe community's Declarations providing the process for Appellee collecting delinquent assessment payments and financial

---

[42] *Fletcher v. Shahan*, 2002 WL 499883, at *3 (Del. Super. March 6,2002).
[43] *VLIW Techn., LLC v. Hewlett Packard Co.*, 840 A.2d 606, 612 (Del. 2012); *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005).
[44] *See Johnson v. State*, 929 A.2d 784 (Del. 2007); *Pencader Associates, LLC v. Synergy Direct Mortgage Inc.*, 2010 WL 2681862, *3 (Del. Super. June 30, 2010).
[45] *Howlett v. Zawora*, 2012 WL 1205103, at *2 (Del. Com. Pl. March 30, 2012).
[46] *Harmon v. State*, 2010 WL 8250826, at *2 (Del. Super. Sept. 27, 2010).
[47] *See id.* at *2.
[48] *Thomas v. Thomas*, 2010 WL 1452872, at *4 (Del. Com. Pl. March. 19, 2010).
[49] *See id.*
[50] *See Rodgers v. Erickson Air-Crane Co. LLC*, 2000 WL 1211157, at *6 (Del. Super. 2000).

consequences including reasonable attorney's fees. Appellant owns a home in the community and pays assessments to Appellee.

Appellant maintained a payment history of her yearly assessments that was frenetic at best. Appellant never paid the assessments at the same time each year from 2015. The various management companies allowed Appellant to pay once a year rather than their own parameters – twice per year for Seascape, quarterly for Signature Property Management and Tidewater Property Management. This payment system seemed rife for what exactly happened – a missed payment in 2019. Appellant failed to pay all of 2019 and the first quarter of 2020. Appellant served as a member of Appellee and therefore had knowledge of what could happen if she failed to pay the assessments.

Appellee filed a debt action against Appellant on May 9, 2020. Appellant then begins to make a series of payments over the next year that do not correlate with the records of either Signature Property Management or Tidewater Property Management. Appellant pays what she believes to be the amount due rather than contact legal counsel for Appellee for the correct amount. Appellant alleges she called and tried to find out the amount, but no one contacted her back and has proof of those phone calls. Representatives from Tidewater claim they have no knowledge of those calls. Once the matter entered the courts, Appellant could no longer contact the management company or make any payments except to legal counsel pursuant to Tidewater Property Management's policy. While Appellant may believe she had paid her assessments in full, that does not correlate with the records kept by the management company. Appellant made payments after the debt action was brought against her and even after the Justice of the Peace Court found in Appellee's favor, however, they were never timely based on the instructions of the account statements. Appellant never reached out to legal counsel for Appellee about making the payments.

12

The Court finds Appellant never completely paid her assessments in full as Tidewater Management Company never allowed her to make any other payments after a certain point nor had Appellant paid the correct amounts in a timely manner.

Rather than attempt to negotiate the matter with legal counsel for Appellee, Appellant continued to litigate the matter. Appellant filed an answer and Bill of Particulars in the Justice of the Peace Court. The parties entered mediation which was not completely successful. The matter went to trial in the Justice of the Peace Court and while the Magistrate found Appellant had paid all monies, attorney's fees were awarded on behalf of Appellee. While that amount was relatively low, Appellant decides then to file an appeal to this honorable Court. Appellant filed two motions and participated in a Motion hearing and a trial. Yet, Appellant believes she should not have to pay attorney's fees as the management companies should pay since they did not have authorization. The Court finds that is illogical. Obviously, Appellee including the homeowners in the community would bear the brunt of the fees if they were just to allow the appeal to end in a default judgment against Appellee.

The Court finds Appellant's assertion that Appellee never gave approval for litigation and therefore she does not have to be incorrect. Hayes Glanden testified he gave approval to institute a collections action against Appellee. In addition, he approved payment of the invoices from Appellee's legal counsel. Whether he read it or not, or understood it or not, he never questioned it. Hayes Glanden knew some action was being brought against Appellant and it was being overseen by a lawyer. Nicholas DeMalto admitted he tried to get this whole matter to go away and stated her did not give authorization, however, the Court finds he did not have all the information and clearly did not understand where the proceedings stood at that time. Once DeMalto recognized

13

that Appellee including the homeowners would be saddled with the attorney's fees, he had no choice but to give approval to continue legal representation through the appellate process.

## CONCLUSION

In conclusion, the Appellant fails to meet her burden that she does not owe any monies for assessments to Appellee in the amount of $4,856.69. In addition, Appellant fails to meet her burden that she is not liable for attorney's fees based upon the Declaration for the community and her continued litigation of this matter which is now $17, 617.10. The decision of the Justice of the Peace Court is **AFFIRMED**.

**IT IS SO ORDERED** this 24th day of October, 2022.

The Honorable Rae M. Mims, Judge

Cc: Shelly Swafford, Judicial Case Manager Supervisor

14